Justice Kennedy
delivered the opinion of the Court.
We decide in this case whether an alien who has requested and been granted voluntary departure from the United States, a form of discretionary relief that avoids certain statutory penalties, must adhere to that election and depart within the time prescribed, even if doing so causes the alien to forgo a ruling on a pending, unresolved motion to reopen the removal proceedings. The case turns upon the interaction of relevant provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, 110 Stat. 3009-546 (IIRIRA or Act). The Act provides that every alien ordered removed from the United States has a right to file *5 one motion to reopen his or her removal proceedings. See 8 U. S. C. § 1229a(c)(7) (2000 ed., Supp. V). The statute also provides, however, that if the alien’s request for voluntary departure is granted after he or she is found removable, the alien is required to depart within the period prescribed by immigration officials, which cannot exceed 60 days. See §1229c(b)(2) (2000 ed.). Failure to depart within the prescribed period renders the alien ineligible for certain forms of relief, including adjustment of status, for a period of 10 years. § 1229c(d)(1) (2000 ed., Supp. V). Pursuant to regulation, however, departure has the effect of withdrawing the motion to reopen. See 8 CFR § 1003.2(d) (2007).
Without some means, consistent with the Act, to reconcile the two commands — one directing voluntary departure and the other directing termination of the motion to reopen if an alien departs the United States — an alien who seeks reopening has two poor choices: The alien can remain in the United States to ensure the motion to reopen remains pending, while incurring statutory penalties for overstaying the voluntary departure date; or the alien can avoid penalties by prompt departure but abandon the motion to reopen.
The issue is whether Congress intended the statutory right to reopen to be qualified by the voluntary departure process. The alien, who is petitioner here, urges that filing a motion to reopen tolls the voluntary departure period pending the motion’s disposition. We reject this interpretation because it would reconfigure the voluntary departure scheme in a manner inconsistent with the statutory design. We do not have the authority to interpret the statute as petitioner suggests. Still, the conflict between the right to file a motion to reopen and the provision requiring voluntary departure no later than 60 days remains untenable if these are the only two choices available to the alien. Absent a valid regulation resolving the dilemma in a different way, we conclude the alien must be permitted an opportunity to withdraw the motion for voluntary departure, provided the *6 request is made before the departure period expires. Petitioner attempted to avail himself of this opportunity below. The Court of Appeals for the Fifth Circuit did not disturb the Board of Immigration Appeals’ (BIA or Board) denial of petitioner’s request to withdraw the voluntary departure election. We now reverse its decision and remand the case.
I
Petitioner Samson Taiwo Dada, a native and citizen of Nigeria, came to the United States in April 1998 on a temporary nonimmigrant visa. He overstayed it. In 1999, petitioner alleges, he married an American citizen. Petitioner’s wife filed an 1-130 Petition for Alien Relative on his behalf. The necessary documentary evidence was not provided, however, and the petition was denied in February 2003.
In 2004, the Department of Homeland Security (DHS) charged petitioner with being removable under § 237(a)(1)(B) of the Immigration and Nationality Act (INA), as redesignated by IIRIRA § 305(a)(2), 110 Stat. 3009-598, and as amended, 8 U. S. C. § 1227(a)(1)(B) (2000 ed., Supp. V), for overstaying his visa. Petitioner’s wife then filed a second 1-130 petition. The Immigration Judge (IJ) denied petitioner’s request for a continuance pending adjudication of the newly filed 1-130 petition and noted that those petitions take an average of about three years to process. The IJ found petitioner to be removable but granted the request for voluntary departure under § 1229c(b) (2000 ed.). The BIA affirmed on November 4, 2005, without a written opinion. It ordered petitioner to depart within 30 days or suffer statutory penalties, including a civil fine of not less than $1,000 and not more than $5,000 and ineligibility for relief under §§ 240A, 240B, 245, 248, and 249 of the INA for a period of 10 years. See App. to Pet. for Cert. 5-6.
Two days before expiration of the 30-day period, on December 2, 2005, petitioner sought to withdraw his request for voluntary departure. At the same time he filed with the *7 BIA a motion to reopen removal proceedings under 8 U. S. C. § 1229a(c)(7) (2000 ed., Supp. V). He contended that his motion recited new and material evidence demonstrating a bona fide marriage and that his case should be continued until the second 1-130 petition was resolved.
On February 8, 2006, more than two months after the voluntary departure period expired, the BIA denied the motion to reopen on the ground that petitioner had overstayed his voluntary departure period. Under § 240B(d) of the INA, 8 U. S. C. § 1229c(d) (2000 ed. and Supp. V), the BIA reasoned, an alien who has been granted voluntary departure but fails to depart in a timely fashion is statutorily barred from applying for and receiving certain forms of discretionary relief, including adjustment of status. See App. to Pet. for Cert. 3-4. The BIA did not address petitioner’s motion to withdraw his request for voluntary departure.
The Court of Appeals for the Fifth Circuit affirmed. Dada v. Gonzales, 207 Fed. Appx. 425 (2006) (per curiam). Relying on its decision in Banda-Ortiz v. Gonzales, 445 F. 3d 387 (2006), the court held that the BIA’s reading of the applicable statutes as rendering petitioner ineligible for relief was reasonable. The Fifth Circuit joined the First and Fourth Circuits in concluding that there is no automatic tolling of the voluntary departure period. See Chedad v. Gonzales, 497 F. 3d 57 (CA1 2007); Dekoladenu v. Gonzales, 459 F. 3d 500 (CA4 2006). Four other Courts of Appeals have reached the opposite conclusion. See, e. g., Kanivets v. Gonzales, 424 F. 3d 330 (CA3 2005); Sidikhouya v. Gonzales, 407 F. 3d 950 (CA8 2005); Marte v. Ashcroft, 394 F. 3d 1278 (CA9 2005); Ugokwe v. United States Atty. Gen., 453 F. 3d 1325 (CA11 2006).
We granted certiorari, see Dada v. Keisler, 551 U. S. 1188 (2007), to resolve the disagreement among the Courts of Appeals. After oral argument we ordered supplemental briefing, see 552 U. S. 1138 (2008), to address whether an alien may withdraw his request for voluntary departure be *8 fore expiration of the departure period. Also after oral argument, on January 10, 2008, petitioner’s second 1-130 application was denied by the IJ on the ground that his marriage is a sham, contracted solely to obtain immigration benefits.
II
Resolution of the questions presented turns on the interaction of two statutory schemes — the statutory right to file a motion to reopen in removal proceedings and the rules governing voluntary departure.
A
Voluntary departure is a discretionary form of relief that allows certain favored aliens — either before the conclusion of removal proceedings or after being found deportable — to leave the country willingly. Between 1927 and 2005, over 42 million aliens were granted voluntary departure; almost 13 million of those departures occurred between 1996 and 2005 alone. See Dept. of Homeland Security, Aliens Expelled: Fiscal Years 1892 to 2005, Table 38 (2005), online at http:// Avww.dhs.gov/ximgtn/statistics/publications/YrBk05En.shtm (all Internet materials as visited June 13, 2008, and available in Clerk of Court’s case file).
Voluntary departure was “originally developed by administrative officers, in the absence of a specific mandate in the statute.” 6 C. Gordon, S. Mailman, & S. Yale-Loehr, Immigration Law and Procedure § 74.02[1], p. 74-15 (rev. ed. 2007) (hereinafter Gordon). The practice was first codified in the Alien Registration Act of 1940, § 20, 54 Stat. 671. The Alien Registration Act amended §19 of the Immigration Act of Feb. 5,1917,39 Stat. 889, to provide that an alien “deportable under any law of the United States and who has proved good moral character for the preceding five years” may be permitted by the Attorney General to “depart the United States to any country of his choice at his OAvn expense, in lieu of deportation.” § 20(c), 54 Stat. 672.
*9 In 1996, perhaps in response to criticism of immigration officials who had expressed frustration that aliens granted voluntary departure were “permitted to continue their illegal presence in the United States for months, and even years,” Letter from Benjamin G. Habberton, Acting Commissioner on Immigration and Naturalization, to the Executive Director of the President’s Commission on Immigration and Naturalization, reprinted in Hearings before the House Committee on the Judiciary, 82d Cong., 2d Sess., 1954 (Comm. Print 1952), Congress curtailed the period of time during which an alien may remain in the United States pending voluntary departure. The Act, as pertinent to voluntary departures requested at the conclusion of removal proceedings, provides:
“The Attorney General may permit an alien voluntarily to depart the United States at the alien’s own expense if, at the conclusion of a proceeding under section 1229a of this title, the immigration judge enters an order granting voluntary departure in lieu of removal and finds that—
“(A) the alien has been physically present in the United States for a period of at least one year immediately preceding the date the notice to appear was served under section 1229(a) of this title;
“(B) the alien is, and has been, a person of good moral character for at least 5 years immediately preceding the alien’s application for voluntary departure;
“(C) the alien is not deportable under section 1227(a)(2)(A)(iii) or section 1227(a)(4) of this title; and
“(D) the alien has established by clear and convincing evidence that the alien has the means to depart the United States and intends to do so.” 8 U. S. C. § 1229c(b)(l).
See also § 1229c(a)(1) (“The Attorney General may permit an alien voluntarily to depart the United States at the alien’s *10 own expense under this subsection” in lieu of being subject to removal proceedings or prior to the completion of those proceedings; the alien need not meet the requirements of § 1229c(b)(1) if removability is conceded).
When voluntary departure is requested at the conclusion of removal proceedings, as it was in this case, the statute provides a voluntary departure period of not more than 60 days. See § 1229c(b)(2). The alien can receive up to 120 days if he or she concedes removability and requests voluntary departure before or during removal proceedings. See § 1229c(a)(2)(A). Appropriate immigration authorities may extend the time to depart but only if the voluntary departure period is less than the statutory maximum in the first instance. The voluntary departure period in no event may exceed 60 or 120 days for §§ 1229c(b) and 1229c(a) departures, respectively. See 8 CFR § 1240.26(f) (2007) (“Authority to extend the time within which to depart voluntarily specified initially by an immigration judge or the Board is only within the jurisdiction of the district director, the Deputy Executive Associate Commissioner for Detention and Removal, or the Director of the Office of Juvenile Affairs.... In no event can the total period of time, including any extension, exceed 120 days or 60 days as set forth in section 240B of the Act”).
The voluntary departure period typically does not begin to run until administrative appeals are concluded. See 8 U. S. C. § 1101(47)(B) (“The order ... shall become final upon the earlier of — (i) a determination by the [BIA] affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the [BIA]”); § 1229c(b)(1) (Attorney General may permit voluntary departure at conclusion of removal proceedings); see also 8 CFR § 1003.6(a) (2007) (“[T]he decision in any proceeding . . . from which an appeal to the Board may be taken shall not be executed during the time allowed for the filing of an appeal . . . ”). In addition some Federal Courts of Appeals have found that they may stay voluntary departure *11 pending consideration of a petition for review on the merits. See, e. g., Thapa v. Gonzales, 460 F. 3d 323, 329-332 (CA2 2006); Obale v. Attorney General of United States, 453 F. 3d 151, 155-157 (CA3 2006). But see Ngarurih v. Ashcroft, 371 F. 3d 182, 194 (CA4 2004). This issue is not presented here, however, and we leave its resolution for another day.
Voluntary departure, under the current structure, allows the Government and the alien to agree upon a quid pro quo. From the Government’s standpoint, the alien’s agreement to leave voluntarily expedites the departure process and avoids the expense of deportation — including procuring necessary documents and detaining the alien pending deportation. The Government also eliminates some of the costs and burdens associated with litigation over the departure. With the apparent purpose of ensuring that the Government attains the benefits it seeks, the Act imposes limits on the time for voluntary departure, see supra, at 10, and prohibits judicial review of voluntary departure decisions, see 8 U. S. C. §§ 1229c(f) and 1252(a)(2)(B)(i).
Benefits to the alien from voluntary departure are evident as well. He or she avoids extended detention pending completion of travel arrangements; is allowed to choose when to depart (subject to certain constraints); and can select the country of destination. And, of great importance, by departing voluntarily the alien facilitates the possibility of readmission. The practice was first justified as involving “no warrant of deportation ... so that if [the alien reapplies] for readmission in the proper way he will not be barred.” 2 National Commission on Law Observance and Enforcement: Report on the Enforcement of the Deportation Laws of the United States 57, 102-103 (1931) (Report No. 5). The current statute likewise allows an alien who voluntarily departs to sidestep some of the penalties attendant to deportation. Under the current Act, an alien involuntarily removed from the United States is ineligible for readmission for a period of 5, 10, or 20 years, depending upon the circumstances of *12 removal. See 8 U. S. C. §1182(a)(9)(A)(i) (“Any alien who has been ordered removed under section 1225(b)(1) of this title or at the end of proceedings under section 1229a of this title initiated upon the alien’s arrival in the United States and who again seeks admission within 5 years of the date of such removal (or within 20 years in the case of a second or subsequent removal.. .) is inadmissible”); § 1182(a)(9)(A)(ii) (“Any alien not described in clause (i) who — (I) has been ordered removed under section [240] or any other provision of law, or (II) departed the United States while an order of removal was outstanding, and who seeks admission within 10 years of the date of such alien’s departure or removal.. . is inadmissible”). An alien who makes a timely departure under a grant of voluntary departure, on the other hand, is not subject to these restrictions — although he or she otherwise may be ineligible for readmission based, for instance, on an earlier unlawful presence in the United States, see § 1182(a)(9)(B)(i).
B
A motion to reopen is a form of procedural relief that “asks the Board to change its decision in light of newly discovered evidence or a change in circumstances since the hearing.” 1 Gordon §3.05[8][c], at 3-76.32. Like voluntary departure, reopening is a judicial creation later codified by federal statute. An early reference to the procedure was in 1916, when a Federal District Court addressed an alien’s motion to reopen her case to provide evidence of her marriage to a United States citizen. See Ex parte Chan Shee, 236 F. 579 (ND Cal.); see also Chew Hoy Quong v. White, 244 F. 749, 750 (CA9 1917) (addressing an application to reopen to correct discrepancies in testimony). “The reopening of a case by the immigration authorities for the introduction of further evidence” was treated then, as it is now, as “a matter for the exercise of their discretion”; where the alien was given a “full opportunity to testify and to present all witnesses and documentary evidence at the original hearing,” judicial in *13 terference was deemed unwarranted. Wong Shong Been v. Proctor, 79 F. 2d 881, 883 (CA9 1935).
In 1958, when the BIA was established, the Attorney General promulgated a rule for the reopening and reconsideration of removal proceedings, 8 CFR § 3.2, upon which the current regulatory provision is based. See 23 Fed. Reg. 9115, 9118-9119 (1958), final rule codified at 8 CFR § 3.2 (1959) (“The Board may on its own motion reopen or reconsider any case in which it has rendered a decision” upon a “written motion”); see also BIA: Powers; and Reopening or Reconsideration of Cases, 27 Fed. Reg. 96-97 (1962). Until 1996, there was no time limit for requesting the reopening of a case due to the availability of new evidence.
Then, in 1990, “fear[ful] that deportable or excludable aliens [were] try[ing] to prolong their stays in the U. S. by filing one type of discretionary relief . . . after another in immigration proceedings,” Justice Dept. Finds Aliens Not Abusing Requests for Relief, 68 Interpreter Releases 907, 908 (July 22, 1991) (No. 27), Congress ordered the Attorney General to “issue regulations with respect to . . . the period of time in which motions to reopen . . . may be offered in deportation proceedings,” including “a limitation on the number of such motions that may be filed and a maximum time period for the filing of such motions,” Immigration Act of 1990, § 545(d)(1), 104 Stat. 5066. The Attorney General found little evidence of abuse, concluding that requirements for reopening are a disincentive to bad faith filings. See 68 Interpreter Releases, supra. Because “Congress . . . neither rescinded [n]or amended its mandate to limit the number and time frames of motions,” however, the Department of Justice (DOJ) issued a regulation imposing new time limits and restrictions on filings. The new. regulation allowed the alien to file one motion to reopen within 90 days. Executive Office for Immigration Review; Motions and Appeals in Immigration Proceedings, 61 Fed. Reg. 18900, 18901, 18905 (1996); see 8 CFR § 3.2 (1996).
*14 With the 1996 enactment of the Act, Congress adopted the recommendations of the DOJ with respect to numerical and time limits. The current provision governing motions to reopen states:
“(A) In general
“An alien may file one motion to reopen proceedings under this section ....
“(B) Contents
“The motion to reopen shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material.
“(C) Deadline
“(i) In general
“Except as provided in this subparagraph, the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal.” 8 U. S. C. § 1229a(c)(7) (2000 ed., Supp. V).
To qualify as “new,” § 1229a(c)(7)(B), the facts must be “material” and of the sort that “could not have been discovered or presented at the former hearing,” 8 CFR § 1003.2(c)(1) (2007); 1 Gordon § 3.05[8][c], at 3-76.34 (“Evidence is not previously unavailable merely because the movant chose not to testify or to present evidence earlier, or because the IJ refused to admit the evidence”). There are narrow exceptions to the 90-day filing period for asylum proceedings and claims of battered spouses, children, and parents, see 8 U. S. C. §§ 1229a(c)(7)(C)(ii), (iv) (2000 ed., Supp. V), which are not applicable here.
The Act, to be sure, limits in significant ways the availability of the motion to reopen. It must be noted, though, that the Act transforms the motion to reopen from a regulatory procedure to a statutory form of relief available to the alien. Nowhere in § 1229c(b) or § 1229a(c)(7) did Congress discuss the impact of the statutory right to file a motion to reopen *15 on a voluntary departure agreement. And no legislative history indicates what some Members of Congress might have intended with respect to the motion’s status once the voluntary departure period has elapsed. But the statutory text is plain insofar as it guarantees to each alien the right to file “one motion to reopen proceedings under this section.” § 1229a(c)(7)(A) (2000 ed., Supp. V).
Ill
The Government argues that, by requesting and obtaining permission to voluntarily depart, the alien knowingly surrenders the opportunity to seek reopening. See Brief for Respondent 29-30. Further, according to the Government, petitioner’s proposed rule for tolling the voluntary departure period would undermine the “carefully crafted rules governing voluntary departure,” including the statutory directive that these aliens leave promptly. Id., at 18, 46-47.
To be sure, 8 U. S. C. § 1229c(b)(2) contains no ambiguity: The period within which the alien may depart voluntarily “shall not be valid for a period exceeding 60 days.” See also 8 CFR § 1240.26(f) (2007) (“In no event can the total period of time, including any extension, exceed” the statutory periods prescribed by 8 U. S. C. §§ 1229c(a) and 1229c(b)); § 1229c(d) (2000 ed. and Supp. V) (imposing statutory penalties for failure to depart). Further, § 1229a(c)(7) does not forbid a scheme under which an alien knowingly relinquishes the right to seek reopening in exchange for other benefits, including those available to the alien under the voluntary departure statute. That does not describe this case, however. Nothing in the statutes or past usage with respect to voluntary departure or motions to reopen indicates they cannot coexist. Neither § 1229a(c)(7) nor § 1229e(b)(2) says anything about the filing of a motion to reopen by an alien who has requested and been granted the opportunity to voluntarily depart. And there is no other statutory language that would place the alien on notice of an inability to seek the *16 case’s reopening in the event of newly discovered evidence or changed circumstances bearing upon eligibility for relief.
In reading a statute we must not “look merely to a particular clause,” but consider “in connection with it the whole statute.” Kokoszka v. Belford, 417 U. S. 642, 650 (1974) (quoting Brown v. Duchesne, 19 How. 183, 194 (1857); internal quotation marks omitted); see also Gozlon-Peretz v. United States, 498 U. S. 395,407 (1991) (“ 'In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy’” (quoting Crandon v. United States, 494 U. S. 152, 158 (1990))); United States v. Heirs of Boisdoré, 8 How. 113, 122 (1850) (“[W]e must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy”).
Reading the Act as a whole, and considering the statutory scheme governing voluntary departure alongside the statutory right granted to the alien by 8 U. S. C. § 1229a(c)(7)(A) (2000 ed., Supp. V) to pursue “one motion to reopen proceedings,” the Government’s position that the alien is not entitled to pursue a motion to reopen if the alien agrees to voluntarily depart is unsustainable. It would render the statutory right to seek reopening a nullity in most cases of voluntary departure. (And this group is not insignificant in number; between 2002 and 2006,897,267 aliens were found removable, of which 122,866, or approximately 13.7%, were granted voluntary departure. See DOJ, Executive Office for Immigration Review, FY 2006 Statistical Year Book, p. Q1 (Feb. 2007).) It is foreseeable, and quite likely, that the time allowed for voluntary departure will expire long before the BIA issues a decision on a timely filed motion to reopen. See Proposed Rules, DOJ, Executive Office for Immigration Review, Voluntary Departure: Effect of a Motion To Reopen or Reconsider or a Petition for Review, 72 Fed. Reg. 67674, 67677, and n. 2 (2007) (“As a practical matter, it is often the *17 case that an immigration judge or the Board cannot reasonably be expected to adjudicate a motion to reopen or reconsider during the voluntary departure period”). These practical limitations must be taken into account. In the present case the BIA denied petitioner’s motion to reopen 68 days after he filed the motion — and 66 days after his voluntary departure period had expired. Although the record contains no statistics on the average disposition time for motions to reopen, the number of BIA proceedings has increased over the last two decades, doubling between 1992 and 2000 alone; and, as a result, the BIA’s backlog has more than tripled, resulting in a total of 63,763 undecided cases in 2000. See Dorsey & Whitney LLP, Study Conducted for: the American Bar Association Commission on Immigration Policy, Practice and Pro Bono Re: Board of Immigration Appeals: Procedural Reforms To Improve Case Management 13 (2003), online at http://www.dorsey.com/files/upload/Dorsey StudyABA_8mgPDF.pdf.
Since 2000, the BIA has adopted new procedures to reduce its backlog and shorten disposition times. In 2002, the DOJ introduced rules to improve case management, including an increase in the number of cases referred to a single Board member and use of summary disposition procedures for cases without basis in law or fact. See BIA: Procedural Reforms To Improve Case Management, 67 Fed. Reg. 54878 (2002), final rule codified at 8 CFR § 1003.1 et seq. (2006); see also § 1003.1(e)(4) (summary affirmance procedures). Nevertheless, on September 30,2005, there were 33,063 cases pending before the BIA, 18% of which were more than a year old. See FY 2006 Statistical Year Book, supra, at Ul. On September 30,2006, approximately 20% of the cases pending had been filed during fiscal year 2005. See ibid. Whether an alien’s motion will be adjudicated within the 60-day statutory period in all likelihood will depend on pure happenstance — namely, the backlog of the particular Board member to whom the motion is assigned. Cf. United States v. Wil *18 son, 503 U. S. 329, 334 (1992) (arbitrary results are “not to be presumed lightly”).
Absent tolling or some other remedial action by the Court, then, the alien who is granted voluntary departure but whose circumstances have changed in a manner cognizable by a motion to reopen is between Scylla and Charybdis: He or she can leave the United States in accordance with the voluntary departure order; but, pursuant to regulation, the motion to reopen will be deemed withdrawn. See 8 CFR § 1003.2(d); see also 23 Fed. Reg. 9115, 9118, final rule codified at 8 CFR § 3.2 (1958). Alternatively, if the alien wishes to pursue reopening and remains in the United States to do so, he or she risks expiration of the statutory period and ineligibility for adjustment of status, the underlying relief sought. See 8 U. S. C. § 1229c(d)(1) (2000 ed., Supp. V) (failure to timely depart renders alien “ineligible, for a period of 10 years,” for cancellation of removal under § 240A, adjustment of status under §245, change of nonimmigrant status under § 248, and registry under § 249 of the INA); see also App. to Pet. for Cert. 3-4 (treating petitioner’s motion to reopen as forfeited for failure to depart).
The purpose of a motion to reopen is to ensure a proper and lawful disposition. We must be reluctant to assume that the voluntary departure statute was designed to remove this important safeguard for the distinct class of deportable aliens most favored by the same law. See 8 U. S. C. §§ 1229c(a)(1), (b)(1)(C) (barring aliens who have committed, inter alia, aggravated felonies or terrorism offenses from receiving voluntary departure); § 1229c(b)(1)(B) (requiring an alien who obtains voluntary departure at the conclusion of removal proceedings to demonstrate “good moral character”). This is particularly so when the plain text of the statute reveals no such limitation. See Costello v. INS, 376 U. S. 120, 127-128 (1964) (counseling long hesitation “before adopting a construction of [the statute] which would, with respect to an entire class of aliens, completely nullify a pro *19 cedure so intrinsic a part of the legislative scheme”); see also Stone v. INS, 514 U. S. 386, 399 (1995) (“Congress might not have wished to impose on the alien” the difficult choice created by treating a motion to reopen as rendering the underlying order nonfinal for purposes of judicial review); INS v. St. Cyr, 533 U. S. 289, 320 (2001) (recognizing “ ‘the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien’ ” (quoting INS v. Cardoza-Fonseca, 480 U. S. 421, 449 (1987))).
IV
A
It is necessary, then, to read the Act to preserve the alien’s right to pursue reopening while respecting the Government’s interest in the quid pro quo of the voluntary departure arrangement.
Some solutions, though, do not conform to the statutory design. Petitioner, as noted, proposes automatic tolling of the voluntary departure period during the pendency of the motion to reopen. We do not find statutory authority for this result. Voluntary departure is an agreed-upon exchange of benefits, much like a settlement agreement. In return for anticipated benefits, including the possibility of readmission, an alien who requests voluntary departure represents that he or she “has the means to depart the United States and intends to do so” promptly. 8 U. S. C. § 1229c(b)(1)(D); 8 CFR §§ 1240.26(c)(1)-(2) (2007); cf. § 1240.26(c)(3) (the judge may impose additional conditions to “ensure the alien’s timely departure from the United States”). Included among the substantive burdens imposed upon the alien when selecting voluntary departure is the obligation to arrange for departure, and actually depart, within the 60-day period. Cf. United States v. Brockamp, 519 U. S. 347, 352 (1997) (substantive limitations are not subject to equitable tolling). If the alien is permitted to stay in the United States past the departure date to wait out the adjudi *20 cation of the motion to reopen, he or she cannot then demand the full benefits of voluntary departure; for the benefit to the Government — a prompt and costless departure — would be lost. Furthermore, it would invite abuse by aliens who wish to stay in the country but whose cases are not likely to be reopened by immigration authorities.
B
Although a statute or regulation might be adopted to resolve the dilemma in a different manner, as matters now stand the appropriate way to reconcile the voluntary departure and motion to reopen provisions is to allow an alien to withdraw the request for voluntary departure before expiration of the departure period.
The DOJ, which has authority to adopt regulations relevant to the issue at hand, has made a preliminary determination that the Act permits an alien to withdraw an application for voluntary departure before expiration of the departure period. According to this proposal, there is nothing in the Act or the implementing regulations that makes the grant of voluntary departure irrevocable. See 72 Fed. Reg. 67679. Accordingly, the DOJ has proposed an amendment to 8 CFR § 1240.26 that, prospectively, would “provide for the automatic termination of a grant of voluntary departure upon the timely filing of a motion to reopen or reconsider, as long as the motion is filed prior to the expiration of the voluntary departure period.” 72 Fed. Reg. 67679, Part IV-D; cf. id., at 67682, Part VI (“The provisions of this proposed rule will be applied prospectively only, that is, only with respect to immigration judge orders issued on or after the effective date of the final rule that grant a period of voluntary departure”). Although not binding in the present case, the DOJ’s proposed interpretation of the statutory and regulatory scheme as allowing an alien to withdraw from a voluntary departure agreement “warrants respectful consideration.” Wisconsin Dept. of Health and Family Servs. v. Blumer, 534 *21 U. S. 473, 497 (2002) (citing United States v. Mead Corp., 533 U. S. 218 (2001), and Thomas Jefferson Univ. v. Shalala, 512 U. S. 504 (1994)).
We hold that, to safeguard the right to pursue a motion to reopen for voluntary departure recipients, the alien must be permitted to withdraw, unilaterally, a voluntary departure request before expiration of the departure period, without regard to the underlying merits of the motion to reopen. As a result, the alien has the option either to abide by the terms, and receive the agreed-upon benefits, of voluntary departure; or, alternatively, to forgo those benefits and remain in the United States to pursue an administrative motion.
If the alien selects the latter option, he or she gives up the possibility of readmission and becomes subject to the IJ’s alternative order of removal. See 8 CFR § 1240.26(d). The alien may be removed by the DHS within 90 days, even if the motion to reopen has yet to be adjudicated. See 8 U. S. C. § 1231(a)(1)(A). But the alien may request a stay of the order of removal, see BIA Practice Manual § 6.3(a), http://www. usdoj.gov/eoir/vll/qapracmanual/apptmtn4.htm; cf. 8 U. S. C. § 1229a(b)(5)(C) (providing that a removal order entered in absentia is stayed automatically pending a motion to reopen); and, though the BIA has discretion to deny the motion for a stay, it may constitute an abuse of discretion for the BIA to do so where the motion states nonfrivolous grounds for reopening.
Though this interpretation still confronts the alien with a hard choice, it avoids both the quixotic results of the Government’s proposal and the elimination of benefits to the Government that would follow from petitioner’s tolling rule. Contrary to the Government’s assertion, the rule we adopt does not alter the quid pro quo between the Government and the alien. If withdrawal is requested prior to expiration of the voluntary departure period, the alien has not received benefits without costs; the alien who withdraws from a voluntary departure arrangement is in the same position as an *22 alien who was not granted voluntary departure in the first instance. Allowing aliens to withdraw from their voluntary departure agreements, moreover, establishes a greater probability that their motions to reopen will be considered. At the same time, it gives some incentive to limit filings to non-frivolous motions to reopen; for aliens with changed circumstances of the type envisioned by Congress in drafting § 1229a(c)(7) (2000 ed. and Supp. V) are the ones most likely to forfeit their previous request for voluntary departure in return for the opportunity to adjudicate their motions. Cf. Supp. Brief for Respondent 1-2 (“[I]t is extraordinarily rare for an alien who has requested and been granted voluntary departure by the BIA to seek to withdraw from that arrangement within the voluntary departure period”).
A more expeditious solution to the untenable conflict between the voluntary departure scheme and the motion to reopen might be to permit an alien who has departed the United States to pursue a motion to reopen postdeparture, much as Congress has permitted with respect to judicial review of a removal order. See IIRIRA § 306(b), 110 Stat. 3009-612 (repealing 8 U. S. C. § 1105a(c) (1994 ed.), which prohibited an alien who “departed from the United States after the issuance of the order” to seek judicial review). As noted previously, 8 CFR § 1003.2(d) provides that the alien’s departure constitutes withdrawal of the motion to reopen. This regulation, however, has not been challenged in these proceedings, and we do not consider it here.
* * *
Petitioner requested withdrawal of his motion for voluntary departure prior to expiration of his 30-day departure period. The BIA should have granted this request, without regard to the merits of petitioner’s 1-130 petition, and permitted petitioner to pursue his motion to reopen. We find this same mistake implicit in the Court of Appeals’ decision. We reverse the judgment of the Court of Appeals and re *23 mand the case for further proceedings consistent with this opinion.

It is so ordered.