**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HERMINIO NEVAREZ NEVAREZ;
ARACELY Y. NEVAREZ,
                    *Petitioners,*

            v.

ERIC H. HOLDER JR., Attorney
General,
                    *Respondent.*

No. 07-74271

Agency Nos.
A079-601-023
A079-601-024

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 15, 2009—San Francisco, California

Filed July 8, 2009

Before: Stephen Reinhardt, John T. Noonan and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Reinhardt

## COUNSEL

Robert B. Jobe, Esq.; Arwen Swink, Esq., Law Office of Robert B. Jobe, San Francisco, California, for the petitioners.

Gregory G. Katsas, Esq.; Blair T. O'Connor, Esq.; John C. Cunningham, Esq., United States Department of Justice, Washington, D.C., for the respondent.

## OPINION

REINHARDT, Circuit Judge:

Before the Board of Immigration Appeals ("BIA"), petitioners Herminio and Aracely Nevarez moved to reopen the removal proceedings so that they could supplement their cancellation of removal application with newly acquired information about their youngest son's learning disability. The BIA

denied the motion to reopen as number-barred and denied the motion to toll the voluntary departure period. We grant the petition and remand to the BIA for further consideration of the number-bar issue and for determination of the effect that *Dada v. Mukasey*, ___ U.S. ___, 128 S.Ct. 2307 (2008) may have on the petitioners' eligibility for cancellation of removal.

## I.  BACKGROUND

Herminio and Aracely Nevarez, petitioners, are natives and citizens of Mexico who entered the United States without inspection in 1990. They have three sons, all of whom are United States citizens and have been diagnosed with learning disabilities of varying severity.

The government commenced removal proceedings against the petitioners in 2002. Petitioners conceded removability but requested cancellation of removal based on the hardship that would result to their two older children, who they knew at the time had learning disabilities. The immigration judge ("IJ") denied relief, finding that the difficulties for the two children would not rise to the level of "an exceptional and extremely unusual hardship." The IJ, however, granted a voluntary departure period of 60 days.

The petitioners appealed the decision to the BIA, which affirmed the IJ without opinion on November 3, 2004, but reduced the duration of voluntary departure from 60 to 30 days. The petitioners filed a timely petition for review with this court.

While the petition for review was pending before us, the petitioners filed their first motion to reopen on April 8, 2005, presenting new evidence to the BIA that the couple's youngest child was diagnosed with a more severe form of learning disabilities than his brothers and had been recommended for special education classes and speech therapy. Although the petitioners conceded that the motion was late, they argued that

the BIA should consider it either under its *sua sponte* authority, 8 C.F.R. § 1003.2(a), or on the basis of equitable tolling. The BIA denied the motion to reopen as untimely. The petitioners again filed a petition for review with this court, which we consolidated with the pending petition on the merits.

On November 15, 2006, we denied in part, dismissed in part, and granted in part the consolidated petition for review. In relevant part, we held that the BIA did not abuse its discretion by denying the motion to reopen as untimely, but that it erred by improperly reducing the voluntary departure period from 60 to 30 days. We remanded to the BIA for further proceedings with respect to voluntary departure. Following remand, the BIA on May 3, 2007, issued an order vacating the November 3, 2004 decision insofar as it granted 30 days of voluntary departure and ordered that the petitioners depart within 60 days.

The petitioners filed a second motion to reopen with the BIA on June 20, 2007, again urging it to consider the new evidence regarding their youngest son's disability. In connection with the motion, they requested a stay of their voluntary departure period. The BIA denied the motion to reopen on the basis that it was number-barred. It also concluded that it would not exercise its *sua sponte* authority to reopen the case, and, finally, that the voluntary departure period would not be stayed. The petition for review of the BIA order is now before us.

## II. ANALYSIS

The denial of a motion to reopen is a final administrative decision subject to review by this court. *See Singh v. Ashcroft*, 367 F.3d 1182, 1185 (9th Cir. 2004). We review questions of law presented by a denial of a motion to reopen *de novo*. *See Singh v. INS*, 213 F.3d 1050, 1052 (9th Cir. 2000). We do not have jurisdiction to review the BIA's decision not to exercise

its sua sponte authority to reopen the case. *See Toufighi v. Mukasey*, 538 F.3d 988, 993 n.8 (9th Cir. 2008).

### A. The BIA should adequately consider whether petitioner's motion is number-barred

**[1]** A motion to reopen "is a form of procedural relief that asks the [BIA] to change its decision in light of newly discovered evidence or a change in circumstances since the hearing." *Dada v. Mukasey*, 128 S. Ct. at 2315 (internal quotation marks omitted). Such a motion must "state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(7)(B). The BIA will not grant the motion unless it determines that "evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing . . . ." 8 C.F.R. § 1003.2(c)(1). In addition, aliens seeking reopening to apply for discretionary relief must show that they have a prima facie case of eligibility for relief and either that they did not have an opportunity to apply for such relief in the former hearing or that the relief is sought on the basis of circumstances that have arisen subsequent to the hearing. *Id.*; *INS v. Wang*, 450 U.S. 139, 141 (1981) (per curiam). The 1996 amendments to the Immigration and Nationality Act ("INA") "transform[ed] the motion to reopen from a regulatory procedure to a statutory form of relief available to the alien." *Dada*, 128 S. Ct. at 2316.

**[2]** The INA sets forth two bars to the BIA's consideration of the statutory relief we have described: the number-bar, which provides that the alien's statutory right to file a motion to reopen is limited to one such motion, 8 U.S.C. § 1229a(c)(7)(A), and the time-bar, 8 U.S.C. § 1229a(c)(7)(C), which establishes a deadline for filing the motion. The regulation interpreting the INA similarly states that, with certain exceptions not applicable here, "a party may file only one motion to reopen deportation or exclusion pro-

ceedings . . . and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened . . . ." 8 C.F.R. § 1003.2(c)(2).

[3] The BIA concluded that petitioners' 2007 motion was number-barred because they had previously filed a motion to reopen in 2005. Petitioners argue, however, that the 2005 motion does not bar them from filing a second motion because the BIA denied it as untimely, and never considered the motion itself. In its denial of petitioners' 2007 motion to reopen, the BIA fails adequately to address petitioners' argument. The BIA observes that there is no requirement that a time or number-barred motion be considered on the merits, but does not reach the question of whether a motion that has not been considered on the merits counts as a first petition for the purposes of the number-bar rule. The two questions are entirely different. The one addressed by the BIA is whether the agency must consider a petition that is not properly before it, the other is whether, under the number-bar rule, a petition that is not properly before the agency serves to bar petitioners from subsequently filing a petition that otherwise is.

[4] The question of whether a petition to reopen that is denied for untimeliness and thus is not considered on the merits by the BIA counts as a first petition for purposes of the number-bar rule is an open question that neither we, nor the BIA, have previously considered. Because the BIA did not adequately consider or explain its conclusion regarding this legal question, we return that issue to it for further review.

## B. The BIA should consider the application of *Dada* in the first instance

The government argues that we should not remand this case to the BIA, because the petitioners overstayed their voluntary departure period and are thus ineligible for most forms of relief for the next ten years. *See* 8 U.S.C. § 1229c(d)(1). The

government relies on *Dada v. Mukasey*, 128 S.Ct. 2307 (2008), which was decided while this petition for review was pending.

Prior to *Dada*, the rule in our circuit was that the filing of a motion to reopen within the voluntary departure period automatically stayed the running of that period while the BIA was considering the motion. *See Barroso v. Gonzales*, 429 F.3d 1195 (9th Cir. 2005); *Azarte v. Ashcroft*, 394 F.3d 1278 (9th Cir. 2005).¹ We reasoned that otherwise a voluntary departure recipient — an alien supposedly favored by the immigration laws — would be effectively stripped of his statutory right to file a motion to reopen under § 1229a(c)(7)(A). We held that it would be absurd to conclude that Congress intended sub silentio to preclude the availability of motions to reopen to a significant number of aliens. At least three other circuits reached the same conclusion. *See Dada*, 128 S.Ct. at 2312.

**[5]** In *Dada*, the Supreme Court agreed with us that the INA should be interpreted to preserve the voluntary departure recipient's right to pursue reopening. *See id.* at 2316-19. It rejected our solution, however, finding no statutory authority for automatically tolling the voluntary departure period during the pendency of a motion to reopen. *See id.* at 2318-19. It held instead that the "appropriate way to reconcile the voluntary departure and motion to reopen provisions is to allow an alien to withdraw the request for voluntary departure before expiration of the departure period." *Id.* at 2319. This rule would give aliens "the option either to abide by the terms, and receive the agreed-upon benefits, of voluntary departure; or, alternatively, to forgo those benefits and remain in the United States to pursue an administrative motion." *Id.* at 2319-20. Because the petitioner in *Dada* was in a circuit that did not automatically toll the voluntary departure period and his request to with-

---

¹Thus, the filing of the petitioners' 2007 motion to reopen would have tolled their voluntary departure period under the law in effect at the time.

draw voluntary departure had been denied, the Supreme Court remanded the case so that the BIA could reconsider the denial and grant the request. The Court did not consider how its opinion would apply to aliens in circuits like ours whose voluntary departure had been automatically stayed during the pendency of their motions to reopen.

The government argues that under Dada such aliens, like the petitioners here, have overstayed their voluntary departure periods because the BIA had no authority to automatically stay their voluntary departures and because they did not seek to withdraw their voluntary departure requests before the expiration of the departure period. The government's view of *Dada*, however, contravenes the language and spirit of its holding. The *Dada* Court was concerned with giving voluntary departure recipients the *option* to choose between filing a motion to reopen and taking advantage of the benefits of voluntary departure, and thus held that petitioners should be afforded the opportunity to withdraw their request for voluntary departure. *See id.* at 2319-20. Petitioners in our circuit and a number of others, were not, in practice, afforded that option, however. They were told, instead, that they could preserve their right to voluntary departure while exercising their right to reopen. The government would construe *Dada* as stripping such petitioners *both* of their motion to reopen, because they have overstayed voluntary departure and are no longer eligible for relief, and, for that same reason, all of the benefits of voluntary departure — even though they simply followed the law in their circuits. Such a construction violates the fundamental principle established by *Dada* as well as the long standing canon of statutory interpretation that deportation statutes should be construed in favor of the alien. *See INS v. St. Cyr*, 533 U.S. 289, 320 (2001).

**[6]** Although we reject the government's interpretation of *Dada*, we conclude that whether *Dada* applies retroactively to aliens like petitioners and, if so, how the option to withdraw requests for voluntary departure should be afforded to aliens

in petitioners' predicament are questions that are best answered in the first instance by the BIA. The Executive Office of Immigration Review ("EOIR"), which includes the BIA, has issued a rule that addresses *Dada*, albeit its solution — that a filing of any motion for reconsideration or reopening automatically terminates voluntary departure — applies prospectively only and thus does not apply to the petitioners. *See Voluntary Departure: Effect of a Motion to Reopen or Reconsider or a Petition for Review*, 73 Fed. Reg. 76,927 (Dec. 18, 2008) (codified at 8 C.F.R. § 1240.26(e)(1)(2009)). If *Dada* itself applies retroactively to extinguish the automatic tolling of petitioners' voluntary departure period, however, petitioners and others in similar circumstances must be afforded some opportunity to withdraw voluntary departure in order not to forfeit their statutory entitlements. The EOIR appeared to recognize that some type of "transition rules" will be necessary for aliens in petitioners' position, as well as for others who filed their motions to reopen prior to *Dada*. It explained, however, that its 2008 rule does not cover such aliens in part because it was based on a rule proposed prior to *Dada* that did not consider retroactive application. *Id.*

**[7]** Because the EOIR chose not to determine how to resolve the petitioners' problem in the rule it issued, we follow the lead of the Second Circuit which recently remanded a similar question to the BIA to resolve in the first instance. *See Mahmood v. Holder*, ___ F.3d ___, 2009 WL 83517 (2d Cir. 2009). On remand, the BIA is instructed to consider the consequences of the application of *Dada* to the petitioners.

For these reasons, we GRANT the petition for review and REMAND the matter to the BIA for further proceedings.

Petition is GRANTED and REMANDED.