**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSE MEZA-VALLEJOS,

*Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,

*Respondent.*

No. 07-70638

Agency No.
A077-105-974

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 10, 2011*
Pasadena, California

Filed October 11, 2011

Before: Betty B. Fletcher, Stephen Reinhardt, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge B. Fletcher

---

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

18769

## COUNSEL

Irving Joseph Gonzalez, Irving Joseph Gonzalez P.A., for petitioner Jose Raul Meza-Vallejos.

Rachel Louise Browning and Eric Warren Marsteller, U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, for respondent Eric H. Holder Jr.

---

## OPINION

B. FLETCHER, Circuit Judge:

Jose Raul Meza-Vallejos, a native and citizen of Peru, seeks review of a decision by the Board of Immigration Appeals ("BIA") denying his motion to reopen. After entering a final order of removal against Meza-Vallejos, the BIA granted him a sixty-day period of voluntary departure. The sixtieth day fell on a Saturday. Meza-Vallejos did not depart. Rather, on the following business day — a Monday — he filed his motion to reopen. The BIA denied the motion on the ground that Meza-Vallejos had failed to voluntarily depart and was thus statutorily ineligible for adjustment of status for a period of ten years.

We hold that where, as here, a period of voluntary departure technically expires on a weekend or holiday, and an immigrant files a motion that would affect his request for voluntary departure on the next business day, such period legally expires on that next business day. We therefore **GRANT** the petition for review and remand this case to the agency for adjudication of the petitioner's motion to reopen on the merits.

## I.

Meza-Vallejos last entered the United States on February 8, 1998 on a non-immigrant visa with authorization to stay through May 15, 1998. He overstayed his visa and subsequently filed an application for political asylum, withholding of removal, and relief under the Convention Against Torture (CAT) in April 1999.

In his application, Meza-Vallejos alleged that he had been a member of "an underground student organization" during his years as a university student in Peru, and that the organization "advocated student rights and against all communism and totalitarianism." He further alleged that he had been "threatened by members of the guerrilla [sic] while at the University for promoting student elections," and that he thought he "would be killed by the guerrilla group Sendero Luminoso" (the Shining Path)[1] if he was returned to Peru.

Following a hearing on the merits in March 2004, an immigration judge (IJ) denied Meza-Vallejos's applications for relief but granted him voluntary departure. Meza-Vallejos posted his voluntary departure bond on April 7, 2004. He then appealed the IJ's decision to the BIA. The BIA dismissed the appeal in May 2005 and renewed the grant of voluntary departure for an additional sixty days, through July 16, 2005 — a Saturday.

Meza-Vallejos did not file a petition for review of the BIA's May 2005 order.[2] Instead, on Monday, July 18, 2005, he filed a motion to reopen with the BIA and an emergency request for an extension of his voluntary departure period. He explained that he had married a U.S. citizen two weeks previously, and she had immediately filed a Form I-130 petition on his behalf.

---

[1]Sendero Luminoso, or the Shining Path, was one of the most formidable rebel movements in Latin America during the 1980s and early 1990s. The group emerged in response to Peru's entrenched system of race- and class-based discrimination, which had deeply impoverished most of Peru's population, especially citizens of indigenous descent. The conflict between the Shining Path and the Peruvian government led to brutal massacres of innocent civilians. Estimates of the death toll range from at least 30,000 to 69,000. Peru's Truth and Reconciliation Commission found that Sendero Luminoso had carried out the majority of the political killings which occurred between 1980 and 2000 in Peru.

[2]Accordingly, the merits of Meza-Vallejos's application for asylum, withholding of removal, and CAT relief are not currently before us.

At that time, the law of our Circuit provided that "in cases in which a motion to reopen is filed *within* the voluntary departure period and a stay of removal or voluntary departure is requested, the voluntary departure period is tolled during the period the BIA is considering the motion." *Azarte v. Ashcroft*, 394 F.3d 1278, 1289 (9th Cir. 2005) (emphasis added), *overruled by Dada v. Mukasey*, 554 U.S. 1 (2008).

In October 2005, the BIA denied the motion to reopen. It concluded that Meza-Vallejos had filed his motion *after* his voluntary departure period had expired. The Board reasoned that "the maximum period of voluntary departure which may be provided by an Immigration Judge or this Board at the conclusion of removal proceedings is 60 days," that "there is no legal basis for this Board to grant an extension of voluntary departure where this Board has already provided . . . the maximum period of voluntary departure allowed," and that "this Board does not have the authority to further extend [Meza-Vallejos]'s period of voluntary departure." Because Meza-Vallejos had failed to voluntarily depart, the BIA concluded, he was ineligible for adjustment of status for a period of ten years. *See* 8 U.S.C. § 1229c(d)(1).[3]

In November 2005, Meza-Vallejos filed a timely petition for review of the BIA's denial of his motion to reopen. That same month, the Ninth Circuit decided *Barroso v. Gonzales*, 429 F.3d 1195 (9th Cir. 2005). In *Barroso*, the BIA granted

---

[3]The civil penalties for failure to depart voluntarily are set forth in 8 U.S.C. § 1229c(d)(1), which provides in relevant part that

> [I]f an alien is permitted to depart voluntarily under this section and voluntarily fails to depart the United States within the time period specified, the alien — (A) shall be subject to a civil penalty of not less than $1,000 and not more than $5,000; and (B) shall be ineligible, for a period of 10 years, to receive any further relief under this section and sections 1229b, 1255, 1258, and 1259 of this title.

*Id.*

the petitioner a thirty-day period of voluntary departure. *Id.* at 1200. Rather than depart on the thirtieth day (a Saturday), petitioner filed a timely motion to reconsider pursuant to 8 U.S.C. § 1229a(c)(6)(B). Such motions must be filed within thirty days of a final administrative order of removal; "[t]herefore, the deadlines for filing Barroso's motion to reconsider and the expiration of Barroso's voluntary departure period fell on the same date: Saturday, March 22, 2003." 429 F.3d at 1202. The BIA had recognized, however, that "[w]hen the thirty-day deadline for filing a motion to reconsider expires on a Saturday, the motion is due on the next business day, which in this case was Monday, March 24, 2003." *Id.* (citations omitted). Yet neither the Department of Justice nor the Department of Homeland Security regulations "offer any guidance as to how to treat weekend days when they are the last calendar day of the voluntary departure period." *Id.* at 1203.

We held that "where the deadline for filing a motion to reconsider falls on the same day as the expiration of the voluntary departure period, the proper solution is to apply the same rule to both thirty-day periods." *Id.* at 1204. We explained that we were "not extending the voluntary departure time period in contravention of INS regulations," but rather were "simply determining which date should be counted as the thirtieth day." *Id.* at n.18 (internal quotations and citation omitted).

The government moved to remand Meza-Vallejos's case to the BIA so that the Board could reconsider his motion to reopen in light of *Barroso*. That motion was granted, and supplemental briefing completed. The BIA again denied Meza-Vallejos's motion to reopen, finding *Barroso* to be distinguishable since in that case the pertinent deadlines both fell on the same (weekend) day. *See Barroso*, 429 F.3d at 1202-04. By contrast, Meza-Vallejos's voluntary departure period had expired prior to the end of the ninety-day period in which he was permitted to file a motion to reopen. Because

he had not voluntarily departed within sixty days, the BIA concluded, Meza-Vallejos was barred from seeking adjustment of status. The Board further explained:

> There is no need to treat the sixtieth day differently if it happens to fall on a weekend or holiday because, unlike a filing requirement, voluntary departure can be accomplished by departing the United States by land, sea, or air any day of the year. Thus, the practical reasons for extending regulatory filing deadlines which fall on a weekend or holiday, which relate to the normal business hours during which documents can be properly filed, do not provide a logical basis for extending the maximum period of voluntary departure statutorily authorized by Congress. Moreover, Congress has not expressly or impliedly provided for such an extension in sections 240B(b) or 240B(d) of the [INA].

Meza-Vallejos timely filed this petition for review of the BIA's denial of his motion to reopen, relying heavily on *Azarte* and *Barroso*. We have jurisdiction pursuant to 8 U.S.C. § 1252(a), and review the denial of a motion to reopen for abuse of discretion. *See, e.g.*, *Perez v. Mukasey*, 516 F.3d 770, 773 (9th Cir. 2008); *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1187 (9th Cir. 2001) (en banc). The BIA abuses its discretion when its decision is "arbitrary, irrational, or contrary to law." *Ontiveros-Lopez v. INS*, 213 F.3d 1121, 1124 (9th Cir. 2000). The BIA's determination of purely legal questions, however, is reviewed de novo. *See, e.g.*, *Minasyan v. Mukasey*, 553 F.3d 1224, 1227 (9th Cir. 2009); *Alali-Amin v. Mukasey*, 523 F.3d 1039, 1041 (9th Cir. 2008).

## II.

### A.

**[1]** "Voluntary departure is a discretionary form of relief that allows certain favored aliens — either before the conclu-

sion of removal proceedings or after being found deportable — to leave the country willingly." *Dada*, 554 U.S. at 8. This form of relief "serves the practical goals of reducing the costs associated with deporting individuals from the United States and providing a mechanism for illegal aliens to leave the country without being subject to the stigma or bars to future relief that are part of the sanction of deportation." *Azarte*, 394 F.3d at 1284.

**[2]** Before the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), "voluntary departure was granted for generous periods of time." *Id.* In 1996, however, "Congress curtailed the period of time during which an alien may remain in the United States pending voluntary departure." *Dada*, 554 U.S. at 9. As explained above, where, as here, an immigrant is granted voluntary departure at the close of removal proceedings, the maximum period of voluntary departure is sixty days. *See* 8 U.S.C. § 1229c(b)(2). "Appropriate immigration authorities may extend the time to depart but only if the voluntary departure period is less than the statutory maximum in the first instance." *Dada*, 554 U.S. at 10.

"A motion to reopen is a traditional procedural mechanism in immigration law with a basic purpose that has remained constant — to give aliens a means to provide new information relevant to their cases to the immigration authorities." *Azarte*, 394 F.3d at 1283. "Like voluntary departure, reopening is a judicial creation later codified by federal statute." *Dada*, 554 U.S. at 12. Prior to IIRIRA, "there was no time limit for requesting the reopening of a case due to the availability of new evidence." *Id.* at 13. IIRIRA provided the first statutory right to a motion to reopen, *see* 8 U.S.C. § 1229a(c)(7), and the implementing regulations "creat[ed] a 90-day filing period and limit[ed] aliens to a single motion to reopen." *Azarte*, 394 F.3d at 1283.

**[3]** *Dada* acknowledged that "the alien who is granted voluntary departure but whose circumstances have changed in a

manner cognizable by a motion to reopen is between Scylla and Charybdis." 554 U.S. at 18. This is so because the alien

> can leave the United States in accordance with the voluntary departure order; but, pursuant to regulation, the motion to reopen will be deemed withdrawn. *See* 8 C.F.R. § 1003.2(d); *see also* 23 Fed. Reg. 9115, 9118, final rule codified at 8 C.F.R. § 3.2 (1958). Alternatively, if the alien wishes to pursue reopening and remains in the United States to do so, he or she risks expiration of the statutory period and ineligibility for adjustment of status, the underlying relief sought. *See* 8 U.S.C. § 1229c(d)(1) (2000 ed., Supp. V).

*Id.* To alleviate such difficulties, the Supreme Court interpreted the INA "to preserve the alien's right to pursue reopening while respecting the Government's interest in the *quid pro quo* of the voluntary departure arrangement." *Id.* at 19. It held "that, to safeguard the right to pursue a motion to reopen for voluntary departure recipients, the alien must be permitted to withdraw, unilaterally, a voluntary departure request before expiration of the departure period, without regard to the underlying merits of the motion to reopen." *Id.* at 21. In so holding, *Dada* overruled our rule "that the filing of a motion to reopen within the voluntary departure period automatically stayed the running of that period while the BIA was considering the motion." *Nevarez Nevarez v. Holder*, 572 F.3d 605, 609 (9th Cir. 2009) (citing *Barroso* and *Azarte*).[4]

---

[4]Following *Dada*, the Executive Office of Immigration Review ("EOIR") issued a rule that provides that "[t]he filing of a motion to reopen or reconsider prior to the expiration of the period allowed for voluntary departure has the effect of automatically terminating the grant of voluntary departure, and accordingly does not toll, stay, or extend the period allowed for voluntary departure." 8 C.F.R. § 1240.26(e)(1). This rule applies only *prospectively*, however. Whether, and how, *Dada* applies retroactively remains an open question. In *Nevarez Nevarez*, we remanded

## B.

Meza-Vallejos contends that his motion to reopen was timely since it was filed on the Monday after his voluntary departure period had expired, but within the ninety-day period provided for filing such motions. Since the BIA does not receive motions to reopen on weekends, he argues, his voluntary departure deadline should have been extended to that Monday.

In response, the government contends that the BIA may properly deny a motion to reopen if such motion is filed after the expiration of a petitioner's voluntary departure period. *See, e.g.*, *Granados-Oseguera v. Mukasey*, 546 F.3d 1011, 1015 (9th Cir. 2008) (per curiam) ("There is no dispute that Oseguera's motion to reopen was filed after the period for voluntary departure had elapsed. Accordingly, the BIA was not simply correct to deny the motion; it was compelled to do so by the operation of 8 U.S.C. § 1229c(d)(1) . . . ."). The government further asserts that, here, the petitioner filed his motion to reopen on the sixty-second day following the BIA's grant of voluntary departure. The government argues that neither *Azarte* nor *Barroso* are apposite, since in both those cases the petitioner moved for relief *before* the expiration of his voluntary departure period. Although the government's brief, filed in 2007, does not discuss *Dada*, that case may be distin-

---

this question to the BIA to decide in the first instance. 572 F.3d at 610; *see id.* at 609 ("The Court did not consider how its opinion [in *Dada*] would apply to aliens in circuits like ours whose voluntary departure had been automatically stayed during the pendency of their motions to reopen."). On remand, the BIA concluded that, since the petitioners "were unaware that they had a unilateral right to withdraw their request for voluntary departure," the BIA would "deem the filing of their motion to reopen, followed by their election to remain to pursue that motion, as an expression of their desire to exercise their unilateral right to withdraw their request for voluntary departure." *See* http://dojvll.gtwy.dcn/Biadec/4872406.pdf (Mar. 12, 2010).

guished for the same reason. *See Dada*, 554 U.S. at 6-7 ("Two days *before* the expiration of [petitioner's voluntary departure period], petitioner sought to withdraw his request for voluntary departure. At the same time he filed with the BIA a motion to reopen removal proceedings . . . ." (emphasis added)).

The threshold question before us, therefore, is whether Meza-Vallejos's period of voluntary departure expired on Saturday, July 16 (the sixtieth day following the BIA's final order) or if, instead, this period expired on Monday, July 18, coinciding with his filing of a renewed motion to reopen with the Board.

As noted, the plain text of the statute governing grants of voluntary departure following termination of removal proceedings limits the voluntary departure period to sixty days. 8 U.S.C. § 1229c(b)(2) ("Permission to depart voluntarily under this subsection shall not be valid for a period exceeding 60 days."). Likewise, the implementing regulations expressly state that "[i]n no event can the total period of time, including any extension, exceed . . . 60 days . . . ." 8 C.F.R. § 1240.26(f).

In its post-remand denial of Meza-Vallejos's motion to reopen, the BIA explained that "[t]he day following the final administrative order granting voluntary departure is the first day [of the voluntary departure period] and the sixtieth day following the final administrative order granting voluntary departure is the sixtieth day." Further, as noted, the BIA reasoned that "[t]here is no need to treat the sixtieth day differently if it happens to fall on a weekend or holiday because, unlike a filing requirement, voluntary departure can be accomplished by departing the United States by land, sea, or air any day of the year."

The BIA has not opined on this question in a precedential decision. Accordingly, its interpretation is entitled to *Skid-*

*more*, not *Chevron*, deference. *See, e.g.*, *Choin v. Mukasey*, 537 F.3d 1116, 1120 (9th Cir. 2008) ("When the BIA advances its interpretation of an ambiguous statute in an unpublished decision, that interpretation is not entitled to *Chevron* deference. Unpublished BIA decisions are instead given *Skidmore* deference, entitling the interpretation to a respect proportional to its power to persuade." (internal quotations and citations omitted)).

The BIA's logic is not unreasonable — it is undisputed that an alien who is granted voluntary departure can leave the United States any day of the week, including a weekend or a holiday. On the other hand, the consequence of the BIA's reasoning is effectively to deprive an alien of the final day (or two) of his sixty-day period for voluntary departure, where, as here, the alien wishes to file a motion to reopen and the last day (or two) of his voluntary departure period falls on a weekend.

**[4]** Yet the clear language of the voluntary departure statute and implementing regulations establishes that an alien granted voluntary departure is entitled to a maximum period of sixty days, and Meza-Vallejos himself was in fact granted this full period. Moreover, as the government concedes, both the statute and the regulations "are silent as to how to handle a voluntary departure period that ends on a weekend."

In *Barroso* we relied on an earlier Ninth Circuit opinion, *Salvador-Calleros v. Ashcroft*, 389 F.3d 959 (9th Cir. 2004). There, the final day of the petitioner's voluntary departure period fell on a Saturday. *Id.* at 962. The following Monday, petitioner timely filed a petition for review with the Ninth Circuit, along with a motion for a stay of removal. *Id.*

**[5]** *Salvador-Calleros* held that, because "Congress has [not] specified a method of counting days in a statute governing a particular procedure," Federal Rule of Appellate Proce-

dure 26(a)[5] governed the computation of the expiration date of petitioner's voluntary departure period. *Id.* at 964; *see also Barroso*, 429 F.3d at 1204 (discussing *Salvador-Calleros*).

The government argues that the application of Rule 26(a) was sensible in *Salvador-Calleros* because that case involved a petition for review properly before us. Since the Ninth Circuit in *Salvador-Calleros* "needed to determine the end-date of the alien's voluntary departure in the first instance, without any agency guidance on the matter from the Board," the government argues, it properly "turned to the Federal Rules of Appellate Procedure, which govern, *inter alia*, how time periods should be calculated by" our court. By contrast, the BIA *has* opined on the computation of the voluntary departure period in this case, which did *not* coincide with a filing deadline relevant to either BIA or Ninth Circuit procedures.

Again, the government's position is not unreasonable. We could certainly hold, as the BIA did, that those in Meza-Vallejos's position must file their motions to reopen on the last business day of their voluntary departure period, even if that falls on the fifty-eighth or fifty-ninth day of that period. Logically, there are only two solutions to the problem of a voluntary departure period that ends on a weekend: either shorten the period (which the BIA would have us do) or lengthen it (as Meza-Vallejos urges).[6]

A hypothetical illustrates what is at stake. A native and citizen of Tunisia — perhaps a former high-ranking government

---

[5]Under Rule 26(a), Saturdays and Sundays are counted within the relevant period, unless the last day of said period falls on a Saturday or Sunday. *See* Fed. R. App. P. 26(a)(1)(c) ("include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").

[6]This may be a problem of limited duration. It may be that the BIA will permit electronic filing in the future, presenting the possibility that motions might be "filed" on weekend days.

official — is granted a voluntary departure period which expires on a Sunday. He has purchased a flight back to Tunisia and intends to depart the United States on that day. The day before his flight, a Saturday, there is a coup d'etat in Tunisia, resulting in a fundamental change in the government of that country. Our immigrant would like to file a timely motion to reopen or reconsider relating to a previous application for adjustment of status on the basis of these new developments, but he cannot do so until Monday. Adopting the government's position, as advanced in this case, would bar such immigrants from relief on the theory that they overstayed their period of voluntary departure and are thus statutorily ineligible for adjustment. Such a result seems arbitrary and manifestly unjust. *Cf. Sherwood Bros., Inc. v. District of Columbia*, 113 F.2d 162, 163-64 (D.C. Cir. 1940) (extending a deadline from Sunday to Monday is the "common-law rule" and "has the support . . . of controlling authority, as well as of tradition, fairness and convenience.").

**[6]** Accordingly, we hold that, where the last day of a period of voluntary departure falls on a day on which an immigrant cannot file a motion for affirmative relief with the BIA, that day does not count in the voluntary departure period if, as here, the immigrant files on the first available day a motion that would either have tolled, automatically withdrawn, or otherwise affected his request for voluntary departure. We are not extending the voluntary departure period, but rather determining on which day the sixtieth day falls. For Meza-Vallejos, this means that neither Saturday, July 16 nor Sunday, July 17 is counted in his voluntary departure period. As a result, his motion to reopen was timely filed on Monday, July 18.

**[7]** Since the BIA denied Meza-Vallejos's motion to reopen solely on the ground that he overstayed his period of voluntary departure, we **GRANT** the petition for review and **REMAND** to the BIA with instructions to consider the merits of the motion to reopen. We award petitioner his costs on appeal.