NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  14a0455n.06

No. 12-4237

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

)
)
JOSE LISBOA, JR.,                                )
                                                 )
        Petitioner,                              )
                                                 )
                                                 )        ON PETITION FOR REVIEW FROM
v.                                               )        THE UNITED STATES BOARD OF
                                                 )        IMMIGRATION APPEALS
ERIC H. HOLDER, JR., Attorney General,           )
                                                 )
        Respondent.                              )

FILED
Jun 25, 2014
DEBORAH S. HUNT, Clerk

BEFORE:  COOK, DAUGHTREY, and WHITE, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.  The petitioner, Jose S. Lisboa, Jr.,
seeks review of a decision by the Board of Immigration Appeals denying his motion to reopen
removal proceedings.  An immigration judge ordered Lisboa, then legally in the country,
removed on the basis of a conviction in state court.  After his removal, a state appellate court
vacated Lisboa's conviction on the basis of a substantive defect in his plea agreement with the
state.  An immigration judge subsequently granted Lisboa's motion to reopen his removal
proceedings, but the Board reversed this decision twice; first, on the basis of a then-existing
regulatory bar against motions to reopen by aliens outside the country and, then, after a reversal
and remand by this court, upon a finding that Lisboa's circumstances were not adequately

exceptional to warrant an exercise of the Board's so-called *sua sponte* authority. Because the Board refused to consider Lisboa's request for equitable tolling of his statutory motion to reopen, and because the Board offered no rational explanation for this ruling, we grant the petition for review, reverse, and remand to allow the Board to address that question in the first instance.

### FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Lisboa is a Brazilian national. He immigrated to the United States in 1971, when he was seven years old and later became a lawful permanent resident. In 1994, he married a United States citizen, Kimberly Lisboa, with whom he has one child.

Lisboa's legal troubles began when he and his wife filed for divorce. The divorce swiftly became acrimonious, as the two wrestled over control of their successful, jointly-owned business and over custody of their daughter. In May 2004, during the pendency of the divorce proceedings, a grand jury indicted Lisboa for conspiracy to commit felonious assault, conspiracy to possess drugs, and possession of criminal tools. In September 2004, Lisboa entered into a plea agreement in which he agreed to plead guilty to reduced charges – one misdemeanor count of aggravated assault and one felony count of domestic violence. The agreement was unusual in one important respect: It purported to settle the immigration consequences of Lisboa's conviction without the involvement of federal immigration authorities. In exchange for the reduction in charges, Lisboa agreed to "surrender his green card, waive extradition, [ ] leave the United States within 45 days of the date of the plea [and] not [ ] enter or apply for reentry into the United States for a minimum of ten years." Lisboa also agreed to a ten-year period of community control and a no-contact order regarding his wife and daughter.

Unsurprisingly, the federal immigration authorities did not consider themselves bound by Lisboa's plea agreement and, before the expiration of the 45-day departure period, the

Department of Homeland Security served Lisboa with a Notice to Appear, charging him with removability on the basis of his Ohio convictions. Lisboa denied removability, sought release on bond, and requested cancellation of removal. Concluding that both of Lisboa's convictions constituted "crimes involving moral turpitude," the immigration judge denied bond and ordered Lisboa detained for the duration of his removal proceedings. After a two-day hearing in which Kimberly Lisboa testified against her former husband, the immigration judge found Lisboa removable and denied his application for cancellation.

Lisboa appealed the immigration judge's removal and cancellation orders to the Board, but withdrew the appeal on May 18, 2005, stating that he "wishe[d] to depart the United States as soon as possible." The Board accepted the withdrawal, and Lisboa left the United States for Brazil on June 17, 2005.

Once in Brazil, Lisboa launched an aggressive campaign to vindicate himself in the United States courts. He hired private investigators to probe the circumstances of his original Ohio state conviction and eventually secured an affidavit from the state's chief witness against him, in which the witness admitted to fabricating evidence at the behest of Lisboa's then-wife. Armed with this new information, Lisboa brought a post-conviction motion in Ohio state court. The trial court denied all relief, but the Ohio Court of Appeals reversed, finding that Lisboa's ten-year community-control sentence exceeded the five-year statutory maximum. As "neither the state, the defense, nor the court can agree to a sentence not provided by law," the court found that this error "render[ed] the attempted sentence a nullity or void . . . [placing] the parties [ ] in the same position as if there had been no judgment." State v. Lisboa, No. 89283, 2008 WL 384141, at *2-3 (Ohio Ct. App. Feb. 14, 2008). The Ohio Court of Appeals expressed no opinion regarding Lisboa's allegations of evidence-fabrication.

Following the vacatur of his state conviction, Lisboa returned to immigration court on April 10, 2008, with a motion to reopen his removal proceedings and vacate the order of removal. Lisboa moved to reopen pursuant to 8 U.S.C. § 1229a(c)(7) or, in the alternative, under the immigration judge's *sua sponte* authority, as authorized by 8 C.F.R. § 1003.23(b). The immigration judge denied the motion for statutory reopening but agreed that Lisboa's case presented the kind of "extraordinary circumstance" that warranted reopening the proceedings *sua sponte*. In so holding, the immigration judge relied on the Board's decisions in *In re Rodriguez–Ruiz*, 22 I. & N. Dec. 1378 (B.I.A. 2000), and *In re Adamiak*, 23 I. & N. Dec. 878 (B.I.A. 2006), for the proposition that the state court judgment vacating Lisboa's conviction was entitled to full faith and credit and that, because it was based on substantive defects in the underlying proceedings (rather than done just for immigration or rehabilitative purposes), the vacatur was also effective for immigration purposes. Accordingly, the immigration judge granted Lisboa's motion to reopen, terminated the removal proceedings, and vacated the order of removal.

The government appealed to the Board, which, on November 20, 2009, sustained the government's position and reversed the immigration judge. It relied on the so-called "post-departure bar," a regulation barring the reopening of immigration proceedings of any non-citizen outside the physical borders of the United States. *See* 8 C.F.R. §§ 1003.2(d) (bar applicable to Board), 1003.23(b)(1) (bar applicable to immigration judge). The Board also noted that Lisboa's "case does not present the sort of 'extraordinary circumstances' that would justify [*sua sponte* reopening]."

Lisboa timely sought review in this court and, in *Lisboa v. Holder*, 436 F. App'x 545 (6th Cir. 2011), we granted relief. We found the Board's reliance on the post-departure bar improper in light of our then-recent decision in *Pruidze v. Holder*, in which we struck down the post-

departure bar regulation as contradicting "clear [statutory] language giving the Board jurisdiction over *all* motions to reopen" without regard to the physical location of the petitioner. 632 F.3d 234, 240 (6th Cir. 2011) (emphasis added); *Lisboa*, 436 F. App'x at 550-51. As such, we determined that the "BIA cannot disclaim jurisdiction on the ground that the alien is outside the United States, which is the basis for the BIA's decision here." *Lisboa*, 436 F. App'x at 551. We remanded the case with instructions that "the BIA must exercise its jurisdiction to determine whether or not to uphold the reopening, whether the reopening is considered to be on Lisboa's motion or *sua sponte*." *Id.*

Back before the Board, Lisboa again defended the immigration judge's decision to reopen *sua sponte* and, again, argued that he was entitled to file a motion to reopen as of right pursuant to 8 U.S.C. § 1229a(c)(7). Although acknowledging that a motion for statutory reopening must be made within 90 days of a final order of removal, Lisboa contended that he was entitled to have the 90-day limit equitably tolled during the time he had spent challenging his state court conviction.

Unpersuaded by this argument, the Board re-affirmed its original decision. It began by finding Lisboa's situation insufficiently "extraordinary" to justify *sua sponte* reopening. Although the Board acknowledged that it had "previously *sua sponte* reopened proceedings in similar circumstances," it insisted that those decisions did not compel a similar result in Lisboa's case. Instead, the Board noted that it "decides each of its cases on its own particular set of circumstances and facts."

In a footnote, the Board also observed that it was declining to consider Lisboa's argument for statutory reopening. Lisboa had requested the Board for equitable tolling of the 90-day limitations period from the time his final order of removal took effect. In briefing before the

Board, however, Lisboa incorrectly asserted that this event occurred on June 17, 2005, which was the date Lisboa left the country. In fact, the order of removal had become administratively final 119 days earlier, when the immigration judge ordered Lisboa removed on February 18, 2005. *See* 8 C.F.R. § 1003.4 (when a non-citizen appeals an order of removal, then withdraws that appeal, limitations period begins to run from date of immigration judge's order). Because more than 90 days elapsed between the immigration judge's February order of removal and Lisboa's actual June departure from the country, the Board reasoned, the equitable tolling Lisboa requested would be "unavailing" even if granted.

## DISCUSSION

**Standard of Review**

We have jurisdiction to review final orders of removal (including final orders denying motions for reopening) under 8 U.S.C. §§ 1252(a)(5), 1229a(c)(7). The Board's decision to grant or deny a motion to reopen as of right under 8 U.S.C. § 1229a(c)(7) is reviewed for abuse of discretion. *Kucana v. Holder*, 558 U.S. 233, 242 (2010); *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006). Such an abuse occurs if the denial of a statutory motion to reopen "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Haddad*, 437 F.3d at 517. Although questions of law are generally subject to *de novo* review, *id.*, Congress has placed certain administrative decisions made in the course of immigration proceedings outside the jurisdiction of the Courts of Appeal – these cannot be reviewed according to any standard. *See* 8 U.S.C. § 1252(a)(2); 5 U.S.C. § 701(a).

**Reopening of Removal Proceedings**

The dispositive issue is whether Lisboa may move to reopen removal proceedings outside the 90-day time limit prescribed by statute and regulation. *See* 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). "A motion to reopen is a form of procedural relief that asks the Board to change its decision in light of newly discovered evidence or a change in circumstances since the hearing." *Dada v. Mukasey*, 554 U.S. 1, 12 (2008) (internal citations omitted). Although finality in removal proceedings is an important goal of the immigration system, *see Zhang v. Mukasey*, 543 F.3d 851, 855 (6th Cir. 2008), the opportunity for non-citizens to reopen proceedings remains "an 'important safeguard' intended 'to ensure a proper and lawful disposition' of immigration proceedings." *Kucana*, 558 U.S. at 242 (quoting *Dada*, 554 U.S. at 18).

As noted above, a non-citizen seeking to reopen his removal proceeding has two avenues available to him. First, he may file a motion to reopen as a matter of right, pursuant to 8 U.S.C. § 1229a(c)(7) and 8 C.F.R. § 1003.2(c). Such a "statutory" or "on motion" request for reopening must satisfy several threshold requirements, including its filing within 90-days of the final order of removal. 8 U.S.C. § 1229a(c)(7)(C)(i). Alternatively, and regardless of how much time has passed since the final order of removal, a petitioner may ask the immigration judge or the Board "at any time [to] reopen or reconsider on its own motion any case in which it has rendered a decision." 8 C.F.R. §§ 1003.2(a) (granting power to Board), 1003.23(b)(1) (granting power to immigration judge). This procedure is known as *sua sponte* reopening and, for the large numbers of non-citizens unable to meet the statute's 90-day time limit, it is their only avenue for

relief.[1]  *See* Rachel E. Rosenbloom, *Remedies for the Wrongly Deported: Territoriality, Finality, and the Significance of Departure*, 33 U. Haw. L. Rev. 139, 174 (2010).

We review the denial of a statutory motion to reopen for abuse of discretion. *Kucana*, 558 U.S. at 250-51.  By contrast, "[t]he decision whether to invoke *sua sponte* authority is committed to the unfettered discretion of the BIA," *Harchenko v. I.N.S.*, 379 F.3d 405, 410 (6th Cir. 2004), and, as such, "the BIA's determination to forgo the exercise of its *sua sponte* authority is a decision that [courts] are without jurisdiction to review."  *Barry v. Mukasey*, 524 F.3d 721, 723-24 (6th Cir. 2008).

Lisboa urges us to review and reverse the Board's denial of both the statutory and *sua sponte* forms of reopening.

**The Board's Refusal to Reopen *Sua Sponte***

Lisboa's request for review of the Board's *sua sponte* decision is plainly foreclosed by this circuit's precedent.  Our decisions in *Harchenko* and *Barry* place that question outside our jurisdiction to review.  It may be true, as Lisboa asserts, that the Supreme Court's decision in *Kucana* has cast some doubt on these decisions.  We explored these doubts in *Gor v. Holder*, 607 F.3d 180, 181-193, 196-99 (6th Cir. 2010), and found them substantial.  Nevertheless, unless and until our circuit's precedent is altered, either by a decision of the Supreme Court or by the court sitting *en banc*, it remains binding upon us.  We so held in *Gor*, 607 F.3d at 181-82, and we reach the same conclusion today.  Under this precedent, the propriety of the Board's denial of Lisboa's request for *sua sponte* relief is not a question that we are authorized to decide.

Perhaps recognizing this, Lisboa makes an alternative argument.  He would have us follow an approach taken by the Second and Third Circuits.  Those courts have held that

---

[1] The term "*sua sponte* reopening" is something of a misnomer because such a procedure is commonly initiated by a written motion by the non-citizen.

although the Board's use of its *sua sponte* discretion is generally unreviewable, limited judicial review is still warranted if the Board "has relied on an incorrect legal premise." *See Pllumi v. Att'y Gen. of U.S.*, 642 F.3d 155, 163 (3d Cir. 2011); *Mahmood v. Holder*, 570 F.3d 466, 469 (2d Cir. 2009). In such a case, the court may "remand to the BIA so it may exercise its authority against the correct 'legal background.'" *Pllumi*, 642 F.3d at 160, 163 (quoting *Mahmood*, 570 F.3d at 469). Insofar as its decisions rest on the proper legal basis, however, the Board's exercise of its *sua sponte* authority remains discretionary under both *Pllumi*, 642 F.3d at 160, and *Mahmood*, 570 F.3d at 471.

Lisboa suggests that adopting this reasoning would allow us to review the legal basis of the Board's decision without calling into question our rulings in *Gor*, *Barry*, or *Harchenko*. This question is one we need not answer here, however, because Lisboa does not identify what "incorrect legal premise" he would have this court correct.

**Statutory Reopening and Equitable Tolling**

Lisboa also urges us to treat his request for reopening as an as-of-right statutory motion under 8 U.S.C. § 1229a(c)(7). Although the motion was obviously filed far beyond the 90-day statutory limitations period, Lisboa contends that it may still be considered timely under the doctrine of equitable tolling. The Board refused to consider the equitable tolling argument because Lisboa had misidentified the date on which his order of removal became administratively final. Lisboa claims that this constitutes both an abuse of discretion and a failure to follow the remand instructions from our previous decision in this case. We agree and therefore find it necessary to remand the petition to the Board to allow it to follow our earlier instructions and consider the merits of Lisboa's statutory reopening request.

Our circuit "applie[s] the doctrine of equitable tolling to otherwise time-barred motions to reopen" if certain equitable conditions are met. *Barry*, 524 F.3d at 724. "Strictly defined, equitable tolling is the doctrine that the statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired." *Barry*, 524 F.3d at 724 (internal brackets omitted) (quoting *Tapia-Martinez v. Gonzales*, 482 F.3d 417, 422 (6th Cir. 2007)). Our approach to equitable tolling seeks to balance the equities for and against the petitioner through application of a five-factor test. *See Barry*, 524 F.3d at 724; *Mezo v. Holder*, 615 F.3d 616, 620 (6th Cir. 2010). But in this case, the Board did not consider the merits of Lisboa's tolling argument under that or any other test – instead, the Board brushed aside the tolling argument on the basis of Lisboa's error in calculating the date on which his removal order became final.

We believe this ruling constituted an abuse of discretion because the miscalculated date is not an adequate basis on which to deny Lisboa relief, particularly in light of our prior remand instruction to the contrary. Although the error in the date introduced a degree of confusion into Lisboa's position before the Broad, the thrust of Lisboa's argument was obvious, and the Board should have reached its merits. Lisboa used the correct legal term to describe the beginning point for his requested equitable tolling period, *i.e.*, the "date of entry of a final administrative order," but he identified an incorrect date for this event. In this situation, the Board had two possible avenues for resolving the inconsistency: It could assume that Lisboa did in fact desire equitable tolling to begin from his "final administrative order" (and explain the accompanying June date as a simple ministerial error). Or the Board could ignore Lisboa's references to a "final administrative order" and, instead, treat the June date as defining the scope of Lisboa's desired relief.

In the context of Lisboa's situation, the first construction is obviously the intended one: It is the only interpretation of Lisboa's request for reopening that is both internally coherent and rationally related to the immigration relief Lisboa seeks. By contrast, in ignoring the legally operative language Lisboa used, the second construction renders the argument pointless in a way that its author could not have intended. Yet, it is exactly this implausible reading that the Board selected. In so doing, the Board interpreted Lisboa's request in a way that rendered it incoherent and, then, relied on that incoherence as justification for dismissing the argument without considering its substance. It provided *no* explanation for this decision, let alone the "rational explanation" our precedent requires. *See Yu Yun Zhang v. Holder*, 702 F.3d 878, 879 (6th Cir. 2012). As a result, we can only conclude that the Board's decision constituted an abuse of discretion, especially in light of our specific direction to the Board to consider the issue on remand. *Lisboa*, 436 F. App'x at 551. Accordingly, "the proper course . . . is to remand to the agency for additional investigation or explanation." *Ward v. Holder*, 733 F.3d 601, 609 (6th Cir. 2013) (quoting *I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16 (2002)).

Finally, we note that the government makes various substantive arguments opposing equitable tolling. These arguments are not properly before this court, however, because they formed no part of the Board decision under review. *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004) ("The Board's denial of [a motion to reopen] may be affirmed only on the basis articulated in the decision and this Court may not assume that the Board considered factors that it failed to mention in its opinion."). Of course, the government will be entitled to raise these arguments before the Board on remand.

**Participation of *Amicus Curiae* in Proceedings Before the Board**

Lisboa raises a final argument, involving what he contends to be the improper involvement of *amicus curiae* in proceedings before the Board. In this case, the *amici* were Kimberly Lisboa (petitioner's ex-wife) and the former government attorney who had prosecuted Lisboa's removal during the 2005 proceedings; they opposed Lisboa's attempts to reopen his proceedings. Our understanding of this issue is necessarily one-sided, given that *amici* have had no opportunity to respond to Lisboa's allegations of impropriety. We do note, however, that serious ethical issues may arise when a former government lawyer seeks to influence proceedings in which, during his time in government service, "he participated personally and substantially." 18 U.S.C. § 207; *see* 5 C.F.R. §§ 2641.201(a); (h)(1), example 2. Whatever the merits of Lisboa's objections, however, he raised them for the first time in his reply brief and, thus, too late. *See United States v. Demjanjuk*, 367 F.3d 623, 637 (6th Cir. 2004).

## CONCLUSION

For these reasons, we dismiss in part and grant in part the petition for review. We remand the case to the Board to allow it to decide, in the first instance, the merits of Lisboa's argument for equitable tolling of his statutory motion to reopen.