NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0360n.06

No. 22-3817

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MOHAMMAD ANOWAR HOSSAIN, | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| MERRICK B. GARLAND, Attorney General, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent-Appellee. | ) | |
| | ) | OPINION |
| | ) | |

Before: CLAY, GRIFFIN, and DAVIS, Circuit Judges.

**CLAY, Circuit Judge**. Petitioner, Mohammad Hossain a native and citizen of Bangladesh, seeks review of an April 21, 2022, Board of Immigration Appeals ("BIA") decision affirming the immigration judge's June 19, 2019, decision denying his application for asylum, 8 U.S.C. § 1158; withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3); and protection under the Convention Against Torture ("CAT"), 8 C.F.R. § 208.16. Because there is substantial evidence in the record to uphold the immigration judge's and BIA's adverse credibility finding, we **DENY** the petition for review.

## I. BACKGROUND

Mohammad Hossain is a citizen of Bangladesh who entered the United States on or about July 17, 2015. Based on Hossain's undocumented entry into the United States, the Department of Homeland Security initiated removal proceedings in September 2015. Hossain conceded the

charge of removal and designated Bangladesh as his country of removal; he then applied for asylum, withholding of removal under the INA, and CAT protection.

In support of his petitions, Hossain avers that he left Bangladesh due to targeted violent attacks against him based on his political affiliation, his membership in the Bangladesh Nationalist Party ("BNP"). On June 19, 2019, an immigration judge issued an order denying each of Hossain's requests based on an adverse credibility finding as to Hossain and his father, who served as one of the witnesses during Hossain's hearing. The immigration judge did not reach the merits of Hossain's requests for relief. On November 21, 2019, Hossain appealed the immigration judge's order to the BIA, and on April 21, 2022, the BIA affirmed the immigration judge's credibility finding and dismissed Hossain's appeal. Hossain then timely filed a petition for review to this Court.

## A. Immigration Court Proceedings

An individual hearing was held before the immigration judge addressing Hossain's claims for relief on February 6, 2018, and May 22, 2018. The immigration judge heard testimony from Hossain and three witnesses in support of Hossain's application for relief. In addition, the immigration judge requested additional briefing from both parties regarding whether the BNP was a Tier III terrorist organization, before issuing its decision.

### i. *Petitioner Mohammed Hossain's Testimony*

At the individual hearing, Hossain testified that he was born in Bangladesh and left the country in April 2015, because his membership in the BNP caused him to fear for his life after surviving three separate physical attacks and death threats from members of a rival political organization, the Awami League. When Hossain lived in Bangladesh, the Awami League was the

government's political party and it remains the governing party today.[1]  Hossain testified that the Awami League targeted him because of his participation and membership in the BNP, a political party that opposed the Awami League.  Hossain testified he joined the BNP in 2012, and his father was also a member and had served in a leadership role since 2008.

As a member of the BNP, Hossain frequently attended meetings, rallied, and posted campaign signs throughout his village.  According to Hossain, two of his BNP friends were killed by individuals in the Awami League because of their affiliation with the BNP.  One was killed while he was in Bangladesh, and the other was killed after he left, which he cited as further justifying his fear of returning to Bangladesh.

The first two attacks by the Awami League against Hossain allegedly took place on January 10, 2014, and June 5, 2014.  Both attacks were purportedly executed by the same five men that Hossain knew were part of the Awami League.  During the June 5, 2014, attack, the assailants, while beating Hossain, said that they had "already threatened [him] . . . [to not] affiliate[] with BNP" and that he must "[l]eave BNP to save [his] life."  Hossain Hr'g Tr., A.R. 000114, 000115.  Hossain sustained injuries from both attacks but did not report the incidents to the police, and his injuries were treated by his father, who was the village doctor.  Hossain testified that he did not report the incidents to the police because he believed it would be futile as the police share a close affiliation with the Awami League.  He also testified that his friends had unsuccessfully reported an Awami League attack and the police offered no help.  On February 22, 2015, Hossain described a third attack, by the same group of Awami League supporters, that led to severe injuries, leaving

---

[1]"In a December 2018 parliamentary election, Sheikh Hasina and her Awami League party won a third consecutive five-year term that kept her in office as prime minister."  U.S. Department of State, 2022 Country Reports on Human Rights Practices: Bangladesh (accessed July 13, 2023 11:34 a.m.), https://bd.usembassy.gov/bangladesh-2021-human-rights-report-executive-summary/.

him unconscious and in the hospital for five days. Hossain reported the third attack to the police and purportedly chose to report this incident based on the severity of his injuries. According to Hossain, once the police officers learned that the attack was done because of Hossain's involvement with the BNP, they told Hossain to leave, and if he did not, they would "call those persons who attacked you . . . . [and] they will come and they will kill you today." Hossain Hr'g Tr., A.R 000125–000126. No police report was filed. Although Hossain claims that the Awami League continued to voice their opposition to Hossain's affiliation with the BNP, Hossain did not discontinue his involvement with the BNP while he was in Bangladesh.

A few months after the third incident, Hossain left his home due to his fear of the Awami League, and he eventually left Bangladesh in April 2015. Hossain testified that after he left Bangladesh, the Awami League continued to search for him and threatened his family. The Awami League purportedly threatened to kill Hossain's father if he did not help them find Hossain. Consequently, Hossain's father has been changing residences to avoid an encounter with the Awami League. Hossain testified that if he returned to Bangladesh he would continue his work with the BNP, which, he alleges, would result in further persecution by the Awami League and potentially death. Hossain purports that there is nowhere in Bangladesh he could live safely as the Awami League is equally forceful and protected throughout the country.

On cross-examination, Hossain was asked about the protests conducted by the BNP leading up to the 2014 election. Hossain testified that the BNP did not take part in the election and was *not* responsible for the disruptive protests and boycotts prior to the 2014 election. When asked if BNP was responsible for strikes and traffic blockades that "shut down commerce in Dhaka [Bangladesh's capital]," Hossain initially answered "no" then when prompted again, said "No. Actually, definitely – BNP definitely did the hartal and the protests, but not like, blocking the roads

– no." Hossain Hr'g Tr., A.R. 000145. Hossain further responded that BNP's intention was to influence the election but not to cause any disruption to the Bangladeshi economy.

At the hearing, the immigration judge asked a clarifying question intended to ascertain whether the protests had impacted the Bangladeshi economy, asking "what the [BNP] leader called for, and then what the effects of that were." *Id.*, A.R. 000147. Hossain appeared to have misunderstood the question and simply reiterated that strikes and protests were ordered by the BNP leader, but the BNP did not have bad intentions. Hossain, however, had submitted articles that the BNP leader had ordered road blockades and boycotts and that there was catastrophic violence leading up to and after the election.

The government then asked Hossain whether BNP protests involved bombs and grenades. Hossain responded that the BNP did not engage in violent acts. The government then asked whether there were reports of the BNP harming others during these protests, and Hossain testified that he did not see any such reports—he instead claimed that the violence was caused by the government (the Awami League) and that the government placed the blame on the BNP. Following Hossain's response, the government pointed to individual violent events that the BNP purportedly took part in, including bombing polling stations, villages, and temples. Hossain claimed he was unaware of any of the specific events listed by the government. When prompted again and asked about one particularly violent event where BNP members purportedly attacked a village in Jessore, Hossain initially denied knowledge of the event, but later admitted to knowing it occurred, and he maintained that the violence was committed by the Awami League and was incorrectly attributed to the BNP.

In the government's briefing to this Court, they contend that because Hossain admits that Bangladesh is small, the fact that he was unaware of these incidences is implausible. During the

hearing, the immigration judge inquired about the relevancy of BNP's protests and violence surrounding the election, and the government responded that their line of questioning was intended to establish that Hossain was a member of a Tier III terrorist organization, which made Hossain ineligible for asylum. Hossain testified on redirect that he never supported or participated in any violence as a form of political protest.

### ii. *Mohammed Hossain, Hossain's Father*

Mohammad Hossain, Hossain's father, testified telephonically from Bangladesh and corroborated Hossain's testimony that Hossain and himself are members of the BNP. Hossain's father also testified that Hossain was harmed by the Awami League on three separate occasions while living in Bangladesh and would be killed by the Awami League if he returned to Bangladesh. In answering why Hossain's life was at risk, Hossain's father stated that Hossain was the "main target" to these political attacks because he both recruited individuals to join BNP and posted campaign material around the village. Hossain's Father's Hr'g Tr., A.R. 000216. Further, Hossain's father corroborated Hossain's testimony that Awami League has threatened him in order to locate Hossain, and that a complaint to the police would be futile because they are "controlled by the Awami League." *Id.*, A.R. 000217. In order to protect himself from any further threats by the Awami League, Hossain's father testified that he had been moving from different residences. When asked about the protests and disruptions to commerce and transportation ordered by the BNP, Hossain's father denied knowing they occurred and stated that the BNP members were only ordered to refrain from participating in the election. Hossain's father then clarified that the strikes and protests did not happen in his village, and he was unaware of what happened elsewhere. When asked about violence that occurred surrounding the 2014 election by the BNP, Hossain's father,

like Hossain, stated that the attacks were perpetuated by the Awami League but falsely attributed to the BNP.

### iii.     Mohammed Alam, Hossain's Uncle

Mohammed Alam, Hossain's uncle, a naturalized U.S. citizen from Bangladesh, testified, in-person, that he left Bangladesh in 1995 due to his involvement with the BNP and to his fear of the Awami League's retaliation against him for his political involvement. Alam confirmed Hossain's involvement with the BNP and stated that if Hossain returned to Bangladesh the Awami League would kill him. On cross-examination, Alam testified that he visited Bangladesh in 2008 and the Awami League did not try to harm him because he was not in the city where he was previously politically involved and was no longer politically involved in Bangladeshi politics. Alam was not asked about the violent protests or economically disruptive practices by the BNP during the 2014 election.

### iv.     Rubium Hossain, Hossain's Friend

Hossain's childhood friend, Robium Hossain, testified telephonically from Bangladesh. Robium corroborated Hossain's testimony, that Hossain is a member of the BNP, he was harmed by the Awami League in Bangladesh, and he would face life threatening harm if he returned to Bangladesh. Robium also testified that the Bangladeshi police do not act against the Awami League because the Awami League controls the police. Regarding the 2014 election, Robium testified that the months leading up to the election, the Awami League engaged in violent protests; however, the BNP protested the Awami League and the election, "quietly" and "very calmly." Rubium Hossain H'rg Tr., A.R. 000242, 000244. Furthermore, he testified that because Hossain would continue to be involved with the BNP, if he returned to Bangladesh, Hossain would not be

safe even if he returned to Dhaka rather than the village where he last resided. Robium denied that the BNP leader encouraged economic disruption and protests during the 2014 election.

**B. Immigration Judge's Opinion**

On June 19, 2019, the immigration judge issued a written decision denying Hossain's application for relief and protection based on an adverse credibility finding as to Hossain and his father. The immigration judge did not reach the merits of Hossain's requests for relief.

First, the immigration judge found that Hossain's "demeanor calls into doubt his credibility," reasoning that Hossain "frequently failed to present forthcoming and responsive testimony." Immigration Judge Opinion, A.R., 000072–000073. Specifically, the immigration judge pointed to the fact that Hossain "repeatedly asserted that the BNP and its supporters engage in no harmful or illegal activity, and that the Awami League was to blame for all of the violence in the country." *Id.*, A.R., 000072. As to the violent incidents surrounding the 2014 election, the immigration judge found that Hossain's ignorance of any of the violence called into question his credibility, as the incidents were widely reported, and the documents submitted by Hossain established that some violent attacks occurred in the region where Hossain lived. Second, the immigration judge found that Hossain's "claims that his actions putting up posters for the BNP resulted in a wide, intense and violent search for [Hossain] to be implausible." *Id.*, A.R., 000073. Because Hossain only participated in political activity in his specific village and his activities were limited in scope, the immigration judge did not find it plausible that the three attacks would result from his limited participation. The immigration judge found this to be especially true since Hossain's father did not allege that he had suffered any harm by the Awami League despite his leadership roles in the BNP. Further, because the affidavits of Hossain's mother and father

corroborating the harm Hossain faced in Bangladesh were "virtually identical," the immigration judge questioned their authenticity. *Id*., A.R., 000073.

As to Hossain's father, the immigration judge found that he lacked credibility, because like Hossain, Hossain's father denied any violence perpetrated by the BNP surrounding the 2014 election, and denied knowledge of "RAB," a special protection agency started by the BNP. As an individual with a leadership role, the immigration judge found Hossain's father's lack of knowledge as to the inner workings of the organization implausible. Additionally, because the immigration judge heard the "sound of pages turning throughout [Hossain's father's] testimony," the judge speculated that he may be reading from a prepared statement, even though he denied such allegation. Immigration Judge Opinion, A.R., 000073.

The immigration judge found Hossain's uncle and friend's testimonies "marginally credible." *Id.*, A.R. 000074. Robium's denial of any BNP violence and boycotts surrounding the 2014 election led to doubt in his credibility by the immigration judge; the immigration judge also reasoned that Hossain's uncle lacked credibility for the same reason. However, Hossain's uncle's testimony did not include any information regarding violence and protests surrounding the 2014 election. Further, the immigration judge reasoned that neither witness had direct knowledge of the three incidents in which Hossain alleges he was harmed. Despite these credibility issues, the immigration judge found that "the balance of testimony provided by the witnesses was consistent and forthright" and gave their testimony "due weight." Immigration Judge Opinion, A.R., 000074.

The immigration judge denied Hossain's requests for relief based on an adverse credibility finding. Separately, the immigration judge denied the government's contention that Hossain was precluded from asylum by the INA's "Terrorism Bar," finding that the BNP did not qualify as a

Tier III terrorist organization under the INA, and thus the bar to asylum under § 208(b)(2)(v) of the INA does not apply to Hossain's application.

## C. Board of Immigration Appeals' Opinion

Hossain appealed the Immigration Judge's decision to the BIA, which affirmed the immigration judge's adverse credibility finding as to Hossain. The BIA determined that the totality of the circumstances supported the immigration judge's determination that "the respondent's refusal to accept basic facts about the BNP's activities in Bangladesh cast doubt on the reliability of his narrative." BIA Opinion, A.R. 000004. Further, the BIA found that "even if [Hossain's] refusal to credit the BNP's well-known involvement in violence flows from his zeal in support of the group," the reliability of Hossain's testimony is still at issue because Hossain's "interpretation of events in Bangladesh is skewed by his partisan commitments." *Id.* Relatedly, the BIA rejected Hossain's argument that the violence surrounding the 2014 elections is irrelevant to his claim, reasoning that Hossain's argument misinterprets the standard. Finding that the correct standard is that "an adverse credibility finding can be based on any factor without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor," citing *El-Moussa v. Holder*, 569 F.3d 250, 256 (6th Cir. 2009), the BIA upheld the denial of all of Hossain's claims based on the adverse credibility determination and did not evaluate the merits of Hossain's claims. Hossain then timely filed a petition for review to this Court.

## II. DISCUSSION

### A. Standard of Review

When this Court reviews a removal order denying asylum, withholding of removal, or CAT protection, "the 'factual findings of the [immigration judge] and [the BIA]—including adverse

credibility determinations—are reviewed for 'substantial evidence.'" *Marouf v. Lynch*, 811 F.3d 174, 180 (6th Cir. 2016) (quoting *Hachem v. Holder,* 656 F.3d 430, 434 (6th Cir.2011). Under this standard, findings of fact, including adverse credibility determinations, must be upheld "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). However, "the [immigration judge's] finding must be supported by specific reasons." *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004). "[S]peculation and conjecture cannot form the basis of an adverse credibility finding." *Marouf*, 811 F.3d at 180 (citations omitted). "[W]hen evaluating credibility, an [immigration judge] should be sensitive to misunderstandings caused by language barriers, the use of translators, and cultural differences*." Reyes-Cardona v. Holder*, 565 F. App'x 366, 367 (6th Cir. 2014) (per curiam) (citing *Iao v. Gonzales*, 400 F.3d 530, 532 (7th Cir. 2005)). Where the BIA reviews an immigration judge's decision and issues a separate opinion, it is considered a final agency decision; however, if the BIA adopts and affirms an immigration judge's adverse credibility finding, this Court reviews the immigration judge's finding directly. *Sanchez-Robles v. Lynch*, 808 F.3d 688, 691–92 (6th Cir. 2015). Questions of law are reviewed *de novo*. *Mostafa v. Ashcroft*, 395 F.3d 622, 624 (6th Cir. 2005).

**B. Analysis**

The BIA upheld the immigration judge's finding that Hossain's "reliability as a witness was undermined by his refusal—despite repeated attempts by his attorney, the Department of Homeland Security, and the Court to elicit testimony consistent with objective country conditions evidence—to acknowledge the BNP's involvement in harmful or illegal activity during the 2014 election violence in Bangladesh." BIA Opinion, A.R. 000004. We find that Hossain's inconsistent responses are sufficient to affirm the BIA's and immigration judge's adverse credibility determinations.

Prior to examining a noncitizen's statutory eligibility for relief, the applicant must make a "threshold showing of credibility[.]" *Zhao v. Holder*, 569 F.3d 238, 249 (6th Cir. 2009). Credibility determinations for claims of asylum, withholding of removal, and for relief under CAT, are made after considering the "totality of the circumstances" and "all relevant factors." *El-Moussa*, 569 F.3d at 256 (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)). These factors may include:

> the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

*Id.* (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)) (emphasis omitted). Because the burden of proof rests upon the petitioner, "an adverse credibility finding is usually fatal to an applicant's ability to prove entitlement to asylum, withholding of removal, or protection under the Convention Against Torture." *Rubio-Mauricio v. Barr*, 782 F. App'x 444, 446 (6th Cir. 2019) (citing *El-Moussa*, 569 F.3d at 256–57). "Under the previous law of this circuit, an immigration judge could base an adverse credibility determination only on 'issues that [went] to the heart of the applicant's claim' and not on 'irrelevant inconsistencies' or inconsistencies that could not be viewed 'as attempts by the applicant to enhance his claims of persecution.'" *El-Moussa*, 569 F.3d at 256 (quoting *Sylla*, 388 F.3d at 926). However, under current law, this is no longer the case, and any inconsistency in an applicant's testimony can be used to justify an adverse credibility finding regardless of whether the inconsistency "goes to the heart of the applicant's claim." *Id.* (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)).

On appeal, Hossain argues that the BIA and immigration judge's adverse credibility

determinations were not supported by substantial evidence because: his testimony regarding the violence surrounding the 2014 election was corroborated by his father's testimony; he accurately answered the government's questions, as the violent attacks referenced by the government were not in his locality and he was personally unaware of them; and his testimony is proven accurate based on the immigration judge finding some credibility in the peaceful nature of the BNP when it found that it was not a government designated terrorist organization. Hossain avers that the immigration judge "merely faults Petitioner for not stating a specific answer the court wanted – namely, that the BNP caused severe economic harm and protests that led to violence during the elections." Pet'r's Br., ECF No. 13, 23–24. As to the actual violence perpetrated against Hossain, he argues that the fact that his father remained unharmed does not defeat the specific incidences that he described in his proceedings, which included sufficient detail to warrant a finding of credibility.[2]

In this case, the BIA found no clear error in the immigration judge's finding, stating that the "record reflects that the line of questioning was seeking to establish the respondent's familiarity with basic facts about the events that took place contained in the objective documentary evidence in the record." BIA Opinion, A.R. 000004. The BIA correctly points to the record, which contains various articles implicating BNP in the violence surrounding the Bangladeshi elections, including

---

[2]On appeal, Hossain also argues that he met his substantive burden of proof for relief and protection. However, the BIA and the immigration judge's decisions expressly declined to reach the substantive merits of Hossain's claims. Rather, Hossain's denial for relief and protection was based on the adverse credibility determination. We thus lack jurisdiction to consider Hossain's arguments regarding his substantive eligibility for relief and protection from removal. *See, e.g., Mbonga v. Garland*, 18 F.4th 889, 893 (6th Cir. 2021) (noting that Court "generally may not address an issue that the Board did not reach"); *Lisboa v. Holder*, 570 F. App'x 468, 474 (6th Cir. 2014) (holding issues that the Board did not address "are not properly before this court"). Accordingly, the only issue before this Court is whether the BIA erred in upholding the immigration judge's adverse credibility finding.

in Hossain's locality. In his testimony, Hossain offered the opinion that the violence was falsely attributed to BNP by the Awami League (the governing party), but his only corroborating evidence was his father's testimony, which the immigration judge found was not credible, and his friend's testimonies which the immigration judge found only marginally credible. Furthermore, the testimony offered by Hossain's friend was largely the same as the testimony provided by Hossain, and does nothing to address the contradiction between Hossain's testimony and the news articles provided by Hossain. Relatedly, the immigration judge's finding that the BNP was not a Tier III terrorist organization under the INA has no bearing on whether the objective evidence of BNPs protests and violence contradicted Hossain and his witnesses' testimonies.

The BIA provided "specific reasons," *Sylla*, 388 F.3d at 926, why Hossain's testimony as to the violence attributed to BNP calls into question his credibility, which go beyond "speculation and conjecture," *Marouf*, 811 F.3d at 180. The BIA focused on Hossain's testimony regarding BNP's involvement in violence surrounding the 2014 elections, and the fact that the information provided by Hossain contradicted record evidence. As articulated above, Hossain's testimony contradicted country conditions reports and articles that Hossain himself had submitted, and Hossain has provided no corroborating evidence to support his version of events. Had Hossain provided articles discussing the confusion of who bears responsibility, the BNP or Awami League, for the violence and protests that occurred during the 2014 elections, his testimony could have been validated. However, the record directly contradicts Hossain and his father's testimonies. No "reasonable adjudicator would be compelled to conclude to the contrary." *See Marouf*, 811 F.3d at 180. Moreover, this Court has upheld adverse credibility determinations for similar reasons. *See, e.g.*, *Gjolaj v. Keisler*, 252 F. App'x 64, 69 (6th Cir. 2007) (finding that "inconsistencies between [the petitioners'] testimony, supporting documents, and country conditions constitute[d]

substantial evidence such that a reasonable finder of fact could conclude that the [petitioners] were incredible." ); *Singh v. Holder,* 349 F. App'x 45, 52 (6th Cir. 2009) (upholding adverse credibility determination where noncitizen was nonresponsive and evasive on questions regarding objective results of elections in native country).

Accordingly, we find that substantial evidence supported the immigration judge's and the BIA's determinations that Hossain was not credible, based on his contradictory testimony when compared to the various news articles attached to his application. Thus, we need not address the other purported inconsistencies on which the immigration judge relied. Because the burden of proof rests upon the petitioner, and Hossain's incredible testimony underlies his claim for relief, the adverse credibility finding is fatal to Hossain's "ability to prove entitlement to asylum, withholding of removal, or protection under the Convention Against Torture." *Rubio-Mauricio*, 782 F. App'x at 446. Further, Hossain's witnesses failed to rehabilitate his credibility. *See Zhao*, 569 F.3d at 249 (finding that the numerous inconsistencies at issue, along with a lack of corroborating evidence, establishes substantial evidence to support an adverse credibility determination).

Given the material discrepancies between Hossain's testimony and the articles he provided with his application, we cannot say that any reasonable adjudicator would have been compelled to find Hossain or his witnesses credible. Substantial evidence supports the immigration judge's adverse credibility determination, and Hossain's claims for relief therefore fail. *See El-Moussa*, 569 F.3d at 256–57.

### III. CONCLUSION

For the reasons above, because there is substantial evidence in the record to uphold the immigration judge's and BIA's adverse credibility finding, we **DENY** the petition for review.